SUPREME COURT OF ARIZONA
EN BANC

STATE OF ARIZONA,                      ) Arizona Supreme Court
                                       ) No. CR-03-0033-AP
                         Appellee,     )
                                       ) Maricopa County Superior
            v.                         ) Court
                                       ) No. CR2001-008991
TRACY ALLEN HAMPTON,                   )
                                       )
                         Appellant.    ) **O P I N I O N**
                                       )
_____)

Appeal from the Superior Court of Maricopa County
The Honorable John Foreman, Judge

_____

Terry Goddard, Attorney General                         Phoenix
     By:  Kent E. Cattani, Chief Counsel
          Capital Litigation Section
Attorneys for the Appellee

Tracy Allen Hampton                                     Florence
In Propria Persona

_____

**H U R W I T Z**, Justice

¶1      Our May 25, 2004, minutes contain an order granting a motion by the Maricopa County Public Defender's Office to withdraw from representation of Appellant Tracy Allen Hampton ("Hampton" or "defendant").  The minutes indicated that an opinion would follow.  This is that opinion.

**I.**

¶2      Hampton was convicted of two counts of first degree murder and one count of manslaughter.  He was sentenced to death for each of the murder convictions and to 12.5 years for the

manslaughter conviction. The convictions and sentences were appealed to this court, and the superior court appointed the Office of the Legal Advocate as appellate counsel.

¶3 On August 5, 2003, the Office of the Legal Advocate filed a motion to withdraw from representing the defendant, citing an ethical conflict of interest. In response to our order requesting more detailed information regarding the nature of the asserted conflict, the Legal Advocate filed a sealed document supplementing its original motion. In that document, a deputy legal advocate asserted that the office had received correspondence from the defendant containing death threats against his appointed attorneys. The deputy suggested that because the defendant allegedly has strong ties with the Aryan Brotherhood, the threats seemed credible. This court granted the Legal Advocate's motion to withdraw and remanded the case to the superior court for appointment of new counsel. The superior court appointed the Maricopa County Public Defender's Office.

¶4 On April 19, 2004, the Maricopa County Public Defender's Office filed a motion to withdraw. The assigned deputy public defender cited an irreconcilable conflict of interest caused by the receipt of a facsimile of a letter apparently handwritten and signed by Hampton. In response to this court's order, a copy of the facsimile was filed under seal on May 7, 2004, along with a supplemental filing by the Public

Defender. The facsimile was received on April 19, 2004, and was accompanied by a cover sheet indicating that it was "from" Hampton. The facsimile was addressed to the two assigned counsel in the Public Defender's Office and demanded their withdrawal, threatening that if the deputy public defenders appointed on his behalf did not "remove [them]selves" from representing Hampton, they would "be dealt with." The handwritten facsimile, which bears both Hampton's name and a signature following the name that appears to be Hampton's, further threatened that continued representation by the public defenders would "put [their] lives in danger." The Public Defender's supplemental filing represented that defendant's sister had called a secretary in the Public Defender's Office, confirming that she had sent the facsimile and asking whether it had been received. The supplemental filing also expressed fear that the threats in the facsimile were credible, given Hampton's alleged gang ties and his apparent ability to direct his sister to fax the threatening letter.[1]

---

[1] The court ordered on May 10, 2004, that the sealed materials filed by the Office of the Legal Advocate and the Public Defender be unsealed for review by the court and its professional staff. We today order that these materials be unsealed for all purposes, including for use by law enforcement in considering future criminal proceedings. Although the sealed materials in part derive from alleged communications from Hampton to counsel, they were appropriately disclosed to this court. *See* Ariz. R. Sup. Ct. 42, ER 1.6(b) ("A lawyer shall reveal such information to the extent the lawyer reasonably

¶5        Our minute order disposes of the motion to withdraw. We write today not only to deal with the future course of Hampton's case, but also to provide guidance about the consequences of threats against appointed counsel.  We have jurisdiction pursuant to Article 6, Section 5(3) of the Arizona Constitution, and Arizona Revised Statutes ("A.R.S.") §§ 13-4031 and -4033 (2001).

## II.

### A.

¶6        This case comes to us on direct appeal pursuant to A.R.S. § 13-4033.  When exercising an appeal as of right, an indigent criminal defendant is entitled to appointed counsel. *Douglas v. California*, 372 U.S. 353, 357-58 (1963).  While an indigent defendant is entitled to effective assistance of counsel, he has no right to choose the particular attorney who

---

believes necessary to prevent the client from committing a criminal act that the lawyer believes is likely to result in death or substantial bodily harm.").  It also appears that, with respect to the facsimile sent to the Public Defender, any potential privilege may have been waived by disclosure of the communication to third parties. *Ulibarri v. Superior Court*, 184 Ariz. 382, 385, 909 P.2d 449, 452 (App. 1995) (finding "limited waiver . . . because a client waives the [attorney-client] privilege by disclosing confidential communications to a third party"); Restatement (Third) of The Law Governing Lawyers § 79 (2000) ("The attorney-client privilege is waived if the client . . . voluntarily discloses the communication in a nonprivileged communication."); *id*. cmt. g (noting a disclosure is voluntary even though the client was not "aware that the communication was privileged," and did not "specifically intend to waive the privilege").

4

will represent him. *State v. Bible*, 175 Ariz. 549, 591, 858 P.2d 1152, 1194 (1993).

¶7     Although a defendant is entitled to counsel for a direct appeal of a felony conviction, he can effectively forgo that assistance through his actions. A defendant can affirmatively waive the right to counsel at trial, as long as the waiver is knowing, voluntary and intelligent.[2] *Faretta v. California,* 422 U.S. 806, 835 (1975); *State v. Lamar*, 205 Ariz. 431, 435-36 ¶ 22, 72 P.3d 831, 835-36 (2003). Even in the absence of an express waiver, a defendant can implicitly waive his right to counsel through his conduct. *United States v. Goldberg*, 67 F.3d 1092, 1100 (3d Cir. 1995). In some circumstances, persistent disruptive or dilatory conduct by a defendant will support a determination that the defendant "waived" his right to counsel. *Id.* Such a waiver by conduct can occur only after a court both warns the defendant that further disruptive conduct may result in the loss of the right

---

[2]     The Supreme Court held in *Martinez v. Court of Appeal of California*, 528 U.S. 152, 162 (2000), that a criminal defendant has no federal constitutional right to proceed without counsel on direct appeal. We have not been confronted with a case after *Martinez* in which a defendant nonetheless seeks to do so and this case presents no occasion for us to address that issue.

to counsel and explains the implications of such a waiver.[3]  *Id.* at 1100-01; *Daniel Y. v. Ariz. Dep't of Econ. Sec.*, 206 Ariz. 257, 260-61 ¶¶ 15-17, 77 P.3d 55, 58-59 (App. 2003) (noting that a defendant must first be warned of the consequences of misconduct and the risks of self-representation before he can be deemed to have waived his right to counsel by his misconduct); *King v. Superior Court*, 132 Cal. Rptr. 2d 585, 592 (Ct. App. 2003) (concluding that implied waiver of counsel by conduct is possible once the defendant "has been warned that he will lose his attorney if he engages in dilatory tactics").

¶8      Case law suggests a third method by which a defendant can lose his right to counsel.  A number of cases suggest that a defendant can "forfeit" his right to counsel without prior warning if he engages in severe misconduct or a course of disruption aimed at thwarting judicial proceedings.  *Goldberg*, 67 F.3d at 1100-01; *see also State v. Delvecchio*, 110 Ariz. 396, 401, 519 P.2d 1137, 1142 (1974) (noting that a defendant, by his disruptive behavior, may forfeit his right to be present during certain criminal proceedings); *Daniel Y.*, 206 Ariz. at 262 ¶ 24,

---

[3]      The United States Court of Appeals for the Third Circuit has suggested that, in accordance with *Faretta*, courts should "require an on-the-record colloquy" with the defendant that includes "an explanation by the [trial] court of the risks of self-representation."  *Goldberg*, 67 F.3d at 1099, 1100-01. We agree.  When trial courts are confronted with misconduct directed toward counsel, they should apprise the defendant, on the record, of the risks and consequences of waiving the right to counsel.

77 P.3d at 60 (recognizing that some jurisdictions have held that defendants can forfeit the right to counsel). These cases suggest that forfeiture is reserved for the most severe cases of misconduct and should result only when less restrictive measures are inappropriate.[4] *Gilchrist v. O'Keefe*, 260 F.3d 87, 100 (2d Cir. 2001) (encouraging trial courts to exercise discretion in taking "intermediate steps short of complete denial of counsel" before finding a defendant has forfeited his right, but recognizing forfeiture without warning as a permissible result in the appropriate case); *Goldberg*, 67 F.3d at 1102 (refusing to impose forfeiture of the right to counsel, even when the defendant's misconduct was an alleged death threat against his attorney, when the lower court conducted only an "*ex parte* hearing where the defendant's interests were not represented," but acknowledging that forfeiture may be an available sanction in some circumstances for a defendant's egregious misconduct); *United States v. McLeod*, 53 F.3d 322, 326 (11th Cir. 1995) (upholding a district court's determination that a defendant had forfeited his right to counsel, even though the defendant "was not warned that his misbehavior might lead to *pro se* representation"); *United States v. Jennings*, 855 F. Supp. 1427,

---

[4] For instance, if a defendant physically assaults his attorney, a trial court might have the defendant restrained before removing the defendant's right to an attorney. Or, the defendant's misconduct may provide the basis for charging him with another crime.

1445 (D. Pa. 1994) (holding that an indigent defendant lost his right to counsel, without warning, when he physically assaulted his court-appointed attorney in open court); *King*, 132 Cal. Rptr. 2d at 588, 596 (finding the right to counsel could be subject to forfeiture if a defendant engaged in a "course of serious misconduct towards counsel" and when "lesser measures to control [a] defendant are insufficient to protect counsel and appointment of successor counsel is futile," but noting that "only in those rare cases of extremely serious misconduct towards counsel where it is apparent that any lesser measures will be patently inadequate to protect counsel may the right to counsel be forfeited in the first instance" without a warning).

**B.**

¶9     The defendant in this case has not expressly waived his right to counsel.  Neither does it appear that any court has warned him that continued misconduct will result in an implied waiver of his right to counsel.  Although it might be possible to conclude Hampton's conduct is so egregious as to constitute a forfeiture of his right to counsel on appeal, we do not today so hold.[5]   Rather, we choose to remand this case to the superior court with instructions to appoint new appellate counsel.[6]

---

[5]     Because both motions to withdraw were filed in this court and granted without a remand for any factual findings, the facts recited above come entirely from the two motions and

8

¶10    At the time it appoints new counsel, the superior court should also take appropriate measures to warn Hampton of the potential consequences of any future misconduct.  We take this occasion, however, to expressly warn the defendant that any future misconduct can be deemed a waiver of his right to counsel and may result in him being forced to represent himself in his capital appeal.  Hampton should be aware that proceeding without counsel in a capital appeal will be extraordinarily difficult.  In many respects, this appeal may be the defendant's last meaningful opportunity to challenge his convictions and death sentence.  If he represents himself, Hampton will be required to examine the record of his criminal case, identify constitutional or other infirmities in the criminal proceedings against him, and make complex legal arguments to this court.  Without the assistance of counsel, the obstacles to success may well be insurmountable.

¶11    Although what we have stated above disposes of Hampton's case, we wish to make plain that courts will not and

_____

associated filings.  Our disposition of this matter today makes unnecessary a remand for such findings.

[6]    The threats in this case occurred after the notice of appeal was filed, and counsel therefore properly brought their motions to withdraw in this court.  When such actions are alleged to have occurred while an action is still pending in superior court, any motions by counsel should be directed to the trial judge, who can hold appropriate evidentiary hearings when necessary.

should not tolerate threats to counsel.  While we leave open today the question of whether certain serious misconduct by a criminal defendant can result in forfeiture of the right to counsel without prior warning, it should be clear to all that conduct of the sort alleged in this case has extremely serious potential consequences with respect to future representation by appointed counsel.  Our system of justice cannot function if dedicated defense counsel face threats of physical violence for doing their jobs and we will not tolerate such threats.

**III.**

¶12     This case is remanded to the superior court for further proceedings consistent with this opinion.


_____
Andrew D. Hurwitz, Justice


CONCURRING:


_____
Charles E. Jones, Chief Justice


_____
Ruth V. McGregor, Vice Chief Justice


_____
Rebecca White Berch, Justice


_____
Michael D. Ryan, Justice


10