253 P.3d 296

**In re EDDIE O.**

**No. 1 CA–JV 10–0232.**

Court of Appeals of Arizona, Division 1, Department C.

April 26, 2011.

---

William G. Montgomery, Maricopa County Attorney by Linda Van Brakel, Deputy County Attorney, Phoenix, Attorneys for Appellant, State of Arizona.

Preciado Law Firm, P.L.C. by Stephanie Preciado, Phoenix, Attorney for Appellee, Eddie O.

## OPINION

BARKER, Judge.

¶ 1 The key question in this case is whether the legislature's provision of 240 days to restore competency in a juvenile proceeding should include time periods when the juvenile does not in good faith participate in the restoration process. Because we hold that the legislative scheme contemplates the juvenile will participate in good faith in the restorative process, we remand to the juvenile court to determine whether that was the case here. If there are time periods in which the juvenile has not so participated, they are to be excluded from the 240–day calculation.

### I.

¶ 2 For the purposes of the issue before us, only a limited number of facts are relevant. Eddie was charged with two offenses and initially determined to be incompetent yet restorable. The statutory time period to restore a juvenile to competency is 240 days from the date of the original finding of incompetency. Ariz.Rev.Stat. ("A.R.S.") § 8–291.10(H) (2007). Eddie was not restored to competency during that time period. Though disputed by Eddie, the State alleges that the failure to restore to competency was due to Eddie's bad faith failure to participate in the restoration process. The psychologist evaluating Eddie prior to the conclusion of the 240–day period opined:

> The 240 day period for restoration services will soon elapse. However there are complications with this determination. He was referred for restoration services on 3/8/10 and he has missed more than 50% of the possible restoration sessions primarily due

to difficulty locating him to deliver the services.

The assigned psychologist further opined at that time:

It is my opinion there is clear and convincing evidence that the juvenile can be restored/educated to adjudicative mental competency in custody with twice weekly restoration services within 60 days.

¶ 3 The State asked the court to do what the psychologist's report suggested: exclude time from the 240-day calculation and order Eddie into custody to complete the restoration services.[1] The trial court viewed the statute as not permitting any exceptions, and thus, held that even the bad faith failure to participate in restoration proceedings would not toll any portion of the 240-day time period. The trial court accordingly dismissed this matter with prejudice pursuant to A.R.S. § 8–291.10(H) as Eddie was not restored in 240 days. The State filed a timely appeal. We have jurisdiction pursuant to A.R.S. §§ 12–120.21(A)(1) (2003), 8–235(A), and Arizona Rule of Procedure for the Juvenile Court 103(A).

## II.

### A.

¶ 4 The issue before us is one of statutory interpretation. This court reviews a trial court's interpretation and application of statutes *de novo*. *Bilke v. State*, 206 Ariz. 462, 464, ¶ 10, 80 P.3d 269, 271 (2003). When a statute is "clear and unambiguous, we apply its plain language and need not engage in any other means of statutory interpretation." *Kent K. v. Bobby M.*, 210 Ariz. 279, 283, ¶ 14, 110 P.3d 1013, 1017 (2005). However, when the plain language of the statute does not unambiguously address the question presented, "we determine legislative intent by reading the statute as a whole, giving meaningful operation to all of its provisions, and by considering factors such as the statute's context, subject matter, historical background, effects and consequences, and spirit and purpose." *Zamora v. Reinstein*, 185 Ariz. 272, 275, 915 P.2d 1227, 1230 (1996).

¶ 5 The statutory provision directly at issue provides as follows:

[If] the court finds that the juvenile is incompetent to proceed and that there is not a substantial probability that the juvenile will regain competency within two hundred forty days after the date of the original finding of incompetency, the court shall dismiss the charges with prejudice and shall initiate civil commitment proceedings, if appropriate.

A.R.S. § 8–291.10(H). To put § 8–291.10(H) in context, we briefly set forth the statutory scheme for juvenile competency.

¶ 6 At any time after the filing of a delinquency petition, a party to the proceeding may request that the juvenile be examined to determine if the juvenile is competent to proceed. A.R.S. § 8–291.01 (2007). On the basis of expert recommendations and other evidence from the parties, the court determines whether the juvenile is competent to proceed. A.R.S. § 8–291.08. " 'Incompetent' means a juvenile who does not have sufficient present ability to consult with the juvenile's lawyer with a reasonable degree of rational understanding or who does not have a rational and factual understanding of the proceedings against the juvenile." A.R.S. § 8–291(2).

¶ 7 If the court determines the juvenile is competent, the proceedings continue without delay. A.R.S. § 8–291.08(B). If the court determines that the juvenile is incompetent to proceed, there are two possible outcomes depending on whether the juvenile can be restored to competency. A.R.S. § 8–291.08(C)–(D). If the court initially finds there is not a "substantial probability" the juvenile will be restored within 240 days, the court must dismiss the petition with prejudice and initiate civil commitment proceedings, if appropriate. A.R.S. § 8–291.08(D). If the court finds the juvenile may be restored to competency, the court shall issue a restoration order directing that "the juvenile undergo an attempt at restoration to competency." A.R.S. § 8–291.08(C).

---

1. The State raised the issue of excluding time with the juvenile court both orally and by written motion at different stages of the competency proceedings.

¶ 8 As part of the restoration process, the court holds regular hearings to determine the juvenile's progress toward competency. A.R.S. § 8–291.10(A), (D). If the court determines that the juvenile has been restored, the juvenile shall be returned to the juvenile court and the proceedings against the juvenile shall continue. A.R.S. § 8–291.10(E). If the court determines that the juvenile remains incompetent but has made substantial progress toward restoration to competency, the court may extend the restoration program period for an additional sixty days. A.R.S. § 8–291.10(F). However, if at any time the court determines that the juvenile remains incompetent and will not be restored within 240 days after the court's original finding of incompetency, the court shall dismiss the petition with prejudice and commence civil commitment proceedings if appropriate. A.R.S. § 8–291.10(H).

### B.

¶ 9 The trial court found that the reference to restoration "within 240 days after the date of the original finding of incompetency" was sufficiently clear to preclude any consideration of other factors. Sometimes hypothetical examples shed light on whether ambiguity exists in statutory language. *See In Re Andrew C.*, 215 Ariz. 366, 370, ¶ 21, 160 P.3d 687, 691 (App.2007) ("Frequently, hypothetical examples shed light on the viability, or lack thereof, of an asserted legal principle."). Assume a juvenile is found incompetent but restorable pursuant to A.R.S. § 8–291.08(C). Further assume that on that same day the juvenile is released (as was Eddie here) from detention. Further assume (unlike Eddie here) that the juvenile absconds for 241 days and then returns to proclaim that his case must now be dismissed with prejudice, pursuant to A.R.S. § 8–291.10(H), because time has expired for restoration. It is true that § 8–291.10(H) does not expressly provide for the consideration of the juvenile's conduct in absconding, but it is also true that the plain language does not expressly preclude it. This hypothetical, similar but not identical to our present facts, shows sufficient ambiguity in the provision such that we should consider the remainder of the legislative scheme in determining whether the legislature intended

a juvenile's conduct to be considered in computing the 240–day time period. *See Zamora*, 185 Ariz. at 275, 915 P.2d at 1230.

¶ 10 A review of the related statutory provisions demonstrates that the legislature contemplated, at a minimum, that the juvenile participate in good faith in the restoration proceedings. For example, the statutory scheme provides that if a juvenile is incompetent but restorable the court must order "that *the juvenile undergo* an attempt at restoration to competency." A.R.S. § 8–291.08(C) (emphasis added). This is not a mandate that the State offer restoration services, though that is implied. Rather, it is a mandate that the *"juvenile* undergo an attempt" at restoration. The juvenile must try. The statutory emphasis is at least as equally on the conduct of the juvenile, as it is on the conduct of the State. Plainly, the statute does not contemplate that the juvenile will be permitted to either physically or mentally absent himself or herself from the restoration proceedings.

¶ 11 Another indicator of legislative intent as to the juvenile's conduct is found in A.R.S. § 8–291.10(F). That portion of the statutory scheme permits the court to extend a restoration program on a showing that "further *participation* will lead to restoration to competency." *Id.* (emphasis added). Again, the legislative mandate is that the juvenile "participat[e]." *Id.*

¶ 12 Finally, in describing the court's review of the restoration status reports, the legislature further demonstrated its intent of juvenile participation. A.R.S. § 8–291.10(A)(3). The legislature described the report as an *"order for participation* in a competency restoration program." *Id.* (emphasis added). This language is also consistent with the language that sets the parameters as to when such an order may be entered. In A.R.S. § 8–291.01(B) the legislature provided that a juvenile be ordered "to *participate* in a treatment program for the restoration of competency" only after a probable cause finding has been made. (Emphasis added.) Thus, that the legislature intended the juvenile to participate during the 240–day time period is plain.

¶ 13 Under the view of the statute urged by Eddie, in the hypothetical example set forth earlier the trial judge would be obligated to dismiss with prejudice the charges filed against an absconding and non-compliant juvenile. When considering the statutory scheme, we do not believe that is what the legislature intended nor is it what the plain language of the statute must mean. *See Zamora*, 185 Ariz. at 275, 915 P.2d at 1230 (requiring consideration of "effects and consequences" when a statute is susceptible to more than one construction). As noted, the statutory scheme is founded on and expressly references the juvenile actively participating in the restoration process. The legislature went so far as to label the order which places a juvenile in a competency restoration program as an "order for *participation.*" A.R.S. § 8–291.10(A)(3) (emphasis added).

¶ 14 Sound principles of statutory construction accordingly encourage us to read the provision for 240 days in the context of a juvenile who has in good faith participated in the restorative process.[2] Thus, we hold that any time periods for which the State is able to prove the juvenile did not in good faith participate in the restorative process may be excluded from the statutory limit of 240 days. We emphasize that the burden is on the State to make this showing.[3]

### C.

¶ 15 Eddie points to our decision in *Nowell v. Rees*, 219 Ariz. 399, 199 P.3d 654 (App.2008) as a basis to affirm the trial court. In *Nowell*, we dealt with adult competency and restoration proceedings. *Id.* The adult competency scheme provides that if a defendant does not regain competency within twenty-one months after the date of the original finding of incompetency a party may request the release of the defendant and the dismissal "without prejudice" of the charges. A.R.S. § 13–4517 (2010). Most importantly for our purposes, the *Nowell* court reserved the very issue that we now address. We stated in *Nowell*:

> The trial court was also concerned that the time limit will encourage defendants to delay treatment.... [T]hat issue is not present in this case. The trial court specifically found that "there are no allegations that any party acted in bad faith."

*Id.* at 406–07, ¶ 24, 199 P.3d at 661–62. We also noted that *"[o]n the record before us*, we see no reason to read any exclusion into the statutes." *Id.* at 406, ¶ 22, 199 P.3d at 661 (emphasis added).[4]

---

2. To the extent one views the provision of 240 days for restoration services to be a form of right, individuals may through their conduct forfeit or waive rights. *See State v. Hampton*, 208 Ariz. 241, 244, 92 P.3d 871, 874 (2004) ("Although a defendant is entitled to counsel ... he can effectively forgo that assistance through his actions."); *State v. Delvecchio*, 110 Ariz. 396, 401, 519 P.2d 1137, 1142 (1974) ("By his conduct" a defendant may forfeit the right to be present at court proceedings.).

3. The State also directs us to Arizona Rule of Procedure for the Juvenile Court 17(B). That rule states in pertinent part as follows:

The following periods shall be excluded from the computation of the time limits set forth in these rules:
1. Delays occasioned by or on behalf of the juvenile, including, but not limited to:
a. Delays caused by an examination and hearing to determine competency;
b. The juvenile's absence or incompetence;
c. The reasonable time allowed, not to exceed thirty (30) days, for the parties to prepare for a hearing after the juvenile's warrant hearing or restoration to competency.

While Rule 17(B) is consistent with the interpretation we give the statute, the basis for our interpretation is the language of the statute itself and the statutory scheme of which it is a part.

4. Further, as to *Nowell*, the traditional environment for restoration proceedings in an adult context is confinement in the state hospital to treat mental defects. In a juvenile setting, however, restoration of competency is often more of an educational process due to lack of knowledge or experience of the juvenile than treating a mental defect. *See In re Charles B.*, 194 Ariz. 174, 175, 978 P.2d 659, 660 (App.1999) ("It is undisputed that the Juvenile is a normal eleven-year-old boy and that the only question [as to competency] was whether, because of his youth, he could understand the delinquency process and aid in his own defense."). Thus, a restoration program may be undertaken, as it was here, when a juvenile is released from detention. As we explained in *State v. Silva*, the procedures set forth for the restoration process in adult cases "were explicitly enacted to comply with the United States Supreme Court's decision in *Jackson v. Indiana*, 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972)." 222 Ariz. 457, 460, ¶ 17, 216 P.3d 1203, 1207 (App.2010). As the Supreme Court

¶ 16 Thus, albeit in a juvenile rather than an adult setting, we take up the issue that *Nowell* expressly decided was not before it: whether a juvenile's bad faith failure to participate in restoration proceedings acts to toll the statutory time period. While the facts in *Nowell* did not support addressing the issue, that is the very issue before us. Our holding in *Nowell* compels no different result as the issue was expressly reserved.

### D.

¶ 17 Having concluded that the juvenile court may permissibly consider facts demonstrating a lack of good faith participation, we turn to what should occur on remand. We note that the facts as to Eddie's conduct are disputed, but there is certainly a basis in the record to support a finding that Eddie did not participate in good faith in the restoration proceedings. At one of the review proceedings, the probation department filed a report seeking to revoke release conditions based upon Eddie's noncompliance. The State specifically requested the time be excluded based on the juvenile's conduct:

> Your Honor, the State would seek a waiver of time from the last setting to today's setting; I believe that is February 27th *due to the juvenile's noncompliance with the Court's orders.*

The State later urged that "since being in restoration, the juvenile has committed more crimes than he has attended restoration sessions." Though perhaps exaggerated, it makes the point. The court specifically found that "the juvenile's caretaker(s) are unable to control, supervise or parent the juvenile in a home environment." In addition, as referenced in part above, the concluding restoration assessment prepared by Dr. Allen provided as follows:

> There was a gap in service from 5/26 to 7/5 as it is reported he could not be located. There were also no services delivered after

8/27/10 until 10/12/10. It is reported he was released from the group home placement to his home and he then could not be located for service delivery. In total he has been in restoration services for more than seven months and there have been three months when no services were delivered. It should also be noted the court ordered twice weekly restoration services on 8/18/10. When considering twice weekly services the juvenile has missed 50% of all potential restoration service sessions.

¶ 18 In short, there are clearly facts in this record from which a finder of fact could determine that the juvenile failed to participate in good faith for certain amounts of time during the restoration process. Because the trial court determined that it could not consider such factors, we remand this matter to the trial court to determine whether, as the State asserts, the juvenile did not in good faith participate in the restoration program for at least some portions of the 240–day period. If the court finds that there are such periods, they may be excluded when calculating the 240 days from the initial date of the finding of incompetency.

### III.

¶ 19 For the foregoing reasons, we vacate the order dismissing this matter with prejudice and remand for proceedings consistent with this opinion.

CONCURRING: MARGARET H. DOWNIE and MICHAEL J. BROWN, Judges.

stated in *Jackson*, "[I]ndefinite commitment of a criminal defendant solely on account of his incompetency to stand trial does not square with the Fourteenth Amendment's guarantee of due process." 406 U.S. at 731, 92 S.Ct. 1845. Thus, the fact that the statutes we construe are in a juvenile setting in which restoration often occurs outside of a confined setting (and did in part here), gives a different context to the statute.