IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

SHAWANEE S., *Appellant*

*v.*

ARIZONA DEPARTMENT OF ECONOMIC SECURITY, E.J., J.J., L.S.,
K.S., *Appellees*

No. 1 CA-JV 13-0186
FILED 2-25-2014

Appeal from the Superior Court in Maricopa County
No. JD21396
The Honorable Aimee L. Anderson, Judge

**AFFIRMED**

COUNSEL

Law Office of Denise L. Carroll, Scottsdale
By Denise Lynn Carroll
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Laura J. Huff
*Counsel for Appellees*

_____

**OPINION**

Judge Michael J. Brown delivered the Opinion of the Court, in which Presiding Judge Andrew W. Gould and Judge Samuel A. Thumma joined.

_____

**B R O W N,** Judge:

¶1            Shawanee S. ("Mother") appeals the juvenile court's order terminating her parental rights to her four young daughters ("the children"). She argues the court erred in finding that (1) the Arizona Department of Economic Security ("ADES") made diligent efforts to provide her with appropriate reunification services, and (2) termination is in the best interests of the children. Because Mother failed to raise any objection in the juvenile court to the adequacy of the services ADES provided, we conclude she waived the right to challenge the court's finding on appeal. As to the court's best interests determination, we find no error and therefore affirm.

**BACKGROUND**

¶2            In November 2011, Child Protective Services ("CPS") received a referral alleging that one of Mother's children, age six, was "exhibiting significant sexual acting out" with other children. The referral also alleged that the child was hoarding food and displaying various behavioral issues. CPS's efforts to contact Mother through phone calls and letters to the homeless shelter where she resided were unsuccessful.

¶3            In January 2012, CPS was notified that Mother used a knife to cut her boyfriend's arm during an altercation that occurred in the presence of the children. Mother was arrested and the children were immediately taken into CPS custody. The children had numerous medical concerns, which, depending on the child, included ringworm, rashes, malnourishment, staph infection, boils, an ear infection, and severe diaper rash. One of the children disclosed that she had been sexually abused by the brother of Mother's previous boyfriend.

¶4            ADES filed a petition alleging the children were dependent as to Mother, based on neglect due to domestic violence and failing to provide the children with the basic necessities of life. Mother denied the allegations but submitted the matter to the juvenile court, which found the

children to be dependent. The court approved a case plan of family reunification and a concurrent case plan of severance and adoption, and also approved and ordered the "services as agreed upon by the parties." Consistent with this ruling, ADES offered Mother a psychological evaluation and consultation, individual counseling, parent aide services (including parenting education and supervised visitation), and transportation.

¶5        In December 2012, the children's guardian ad litem moved to terminate Mother's parental rights, alleging Mother substantially neglected or willfully refused to remedy the circumstances that caused the children to remain in a court-ordered out-of-home placement for nine months or longer pursuant to Arizona Revised Statutes ("A.R.S.") section 8-533(B)(8)(a). In April 2013, ADES joined in the motion for termination.

¶6        The juvenile court held a two-day contested severance hearing in June 2013. Mother acknowledged that she cut her boyfriend with a knife and engaged in other incidents of domestic violence. She admitted she did not contact the police after learning one of her daughters had been sexually abused. Mother also admitted she had recently lived in the same household with the alleged abuser for several months to avoid becoming homeless. Mother testified she completed more than forty hours of individual counseling, but acknowledged she did not complete parent aide services and refused substance abuse treatment even though it was recommended as a result of the psychological evaluation. Mother also acknowledged that at one point she refused to participate in further visits because the children were acting out.

¶7        CPS caseworker Chrystal Thomson testified that Mother's participation in services was limited. Mother substantially participated in individual therapy, but missed numerous visits with the children, stating she was "tired" and "had a lot going on." Mother also missed visits for more than a month because the children had behaved poorly during prior visits. Although Mother was initially permitted to have in-home visits with the children, that visitation ceased because Mother was teaching the children "erotic" dancing during visits and frequently had a boyfriend present. As a result, all subsequent visits were held at a visitation center. Ultimately, Mother was removed from the parent aide program because she did not maintain contact for more than thirty days and she repeatedly failed to attend scheduled meetings to discuss the children's therapy and treatment.

¶8        Following the presentation of evidence and closing arguments, the juvenile court granted the motion for termination, finding that Mother "substantially neglected, and at times, willfully refused to remedy the circumstances that caused each of these children to be in their out-of-home placement." The court also made detailed findings regarding the reunification services provided by ADES, and Mother's compliance (or lack thereof) with the services offered, concluding that ADES "has made more than diligent efforts to provide appropriate reunification services." The court also found that termination of Mother's parental rights would be in the children's best interests. The court later confirmed its findings in a signed order and Mother timely appealed.

## DISCUSSION

¶9        To terminate parental rights, the juvenile court must find by clear and convincing evidence the existence of at least one of the statutory grounds for termination enumerated in A.R.S. § 8-533(B) and must find by a preponderance of the evidence that termination would serve the child's best interests. Ariz. R.P. Juv. Ct. 66(C); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12, 995 P.2d 682, 685 (2000). As applicable here, ADES was required to prove by clear and convincing evidence that (1) the children had been in an out-of-home placement for at least nine months under a court order; (2) the parent had "substantially neglected or willfully refused to remedy the circumstances causing the out-of-home placement;" and (3) ADES had "made a diligent effort to provide appropriate reunification services." A.R.S. § 8-533(B)(8)(a).

### A.        Waiver

¶10        Mother challenges the court's finding that ADES had made a diligent effort to provide appropriate reunification services, claiming she was not given the time and services necessary to enable her to reunify with the children. Specifically, she asserts that ADES should have provided her with a second psychological evaluation to assess her progress and determine whether additional services were necessary. Because Mother failed to raise any objection in the juvenile court regarding the adequacy of services provided to her, as a threshold issue, we consider whether she waived that argument on appeal. *See Kimu P. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 39, 44 n.3, 178 P.3d 511, 516 n.3 (App. 2008) (noting that parent waives an argument by failing to raise it in the juvenile court); *Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 452, ¶ 21, 153 P.3d 1074, 1081 (App. 2007) (concluding that parent waived claim that juvenile court failed to make statutorily required findings by failing

to object in the juvenile court); *see also Trantor v. Fredrikson*, 179 Ariz. 299, 300, 78 P.2d 657, 658 (1994) ("[A]bsent extraordinary circumstances, errors not raised in the trial court cannot be raised on appeal" because "a trial court and opposing counsel should be afforded the opportunity to correct any asserted defects[.]").

¶11    There is no Arizona case law resolving this precise issue.  In *Christina G. v. Arizona Department of Economic Security*, we noted that a parent may waive the right to challenge on appeal the adequacy of ADES's reunification efforts by failing to raise the issue in the juvenile court proceedings.  227 Ariz. 231, 235 n.8, ¶ 15, 256 P.3d 628, 632 n.8 (App. 2011).  We explained that the mother in that case had not "requested additional services or raised an objection to the manner in which court-ordered services were being provided, despite multiple opportunities to do so at various stages of the proceedings."  *Id.*  We also noted that the mother had failed to object to the juvenile court's explicit findings "that ADES was making reasonable efforts" in providing reunification services.  *Id.*  We declined to affirm the case based on waiver, however, because ADES did not raise it as an argument on appeal.  *Id.*  Here, ADES does assert that Mother waived her challenge to the juvenile court's diligent effort finding.

¶12    Generally, when a child is removed from the home, ADES is presumptively obligated to make reasonable efforts to "provide services to the child and the child's parent."  *See* A.R.S. § 8-846(A) (requiring the juvenile court to "order the department to make reasonable efforts to provide services to the child and the child's parent," unless the court finds by clear and convincing evidence that an A.R.S. § 8-846(B) exception applies).  When a dependency case plan includes family reunification, ADES is obligated to provide services reasonably geared toward family reunification.  *See* Ariz. R.P. Juv. Ct. 56(E)(1) (requiring juvenile court, at disposition after a dependency finding, to "determine the appropriate case plan and . . . [e]nter orders concerning appropriate services required to achieve the case plan").  Furthermore, when ADES seeks severance based on length of time in care, ADES must prove that it "has made a diligent effort to provide appropriate reunification services."  A.R.S. § 8-533(B)(8); *see also Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶¶ 32-34, 971 P.2d 1046, 1053 (App. 1999) (finding constitutional right to reunification services when ADES sought termination of parental rights based on mental illness).  In this case, there is no question that ADES was obligated to make diligent efforts to provide appropriate reunification services to Mother.

¶13 ADES's obligation, however, does not free a parent from the need to raise a timely objection if the parent believes services are inadequate. A parent must raise such a challenge in the juvenile court and may do so in one of many ways. At a pre-hearing conference (the first dependency proceeding with all parties present), the participants are to discuss and seek resolution on various issues, including "the provision of services to the child and family." Ariz. R.P. Juv. Ct. 49(A), (D). At a preliminary protective hearing (often the first court hearing in a dependency), the juvenile court "shall . . . [d]etermine whether a proposed case plan for services has been submitted and is appropriate" and "shall enter appropriate orders as to . . . the provision of services to the child and family." Ariz. R.P. Juv. Ct. 50(A), (B)(8), (C)(4). At a disposition hearing following a dependency finding, the juvenile court "shall determine the appropriate case plan and shall . . . [e]nter orders concerning appropriate services required to achieve the case plan." Ariz. R.P. Juv. Ct. 56(E)(1). A parent has a right to be present, to be represented by counsel and to be heard regarding services at each of these proceedings. *See* Ariz. R.P. Juv. Ct. 49(B) (listing participants at pre-hearing conference); Ariz. R.P. Juv. Ct. 50(B)(2) (appointment of counsel).

¶14 After services have been identified by the participants and ordered by the juvenile court, a parent dissatisfied with the services actually being provided can raise the issue with the juvenile court in a variety of ways. At periodic review hearings, as well as the permanency planning hearing, a parent can object to the adequacy of services and "[a]t the conclusion of the hearing, the court shall . . . [e]nter appropriate orders concerning . . . services to be provided to the family." Ariz. R.P. Juv. Ct. 58(F)(3). A parent may also object to the juvenile court's "reasonable efforts" finding, *see* A.R.S. § 8-846(A), or request an evidentiary hearing by motion to address the adequacy of services. *See* Ariz. R.P. Juv. Ct. 58(D) (noting, in the context of a review hearing, that "[a]ny party seeking an evidentiary hearing on any issue shall file a motion requesting that the matter be set for a contested hearing"). And, at a termination hearing, a parent can dispute evidence that ADES claims shows a diligent effort to provide appropriate reunification services, including by testifying about the services actually provided. *See* A.R.S. § 8-533(B)(8).

¶15 In determining whether the grounds for termination have been satisfied, the juvenile court is in a much better position than this court to evaluate the effectiveness and impact of the services provided, as credibility determinations may be required to weigh the evidence presented. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 12,

53 P.3d 203, 207 (App. 2002). The juvenile court's role in the dependency process is just as critical—the court ensures that all parties receive proper notice of court proceedings and are given meaningful opportunities for input and objection. The court is also tasked with reviewing ADES's case reports, which must include an update as to the services provided to the family. *See* Ariz. R.P. Juv. Ct. 58(C)(2) (requiring ADES to "provide a report to the court and the parties at least fifteen (15) days prior to" a review hearing addressing "[t]he services being provided to the child and family"). The court holds review hearings at least once every six months. A.R.S. § 8-847(A). In doing so, the court necessarily evaluates the reports and related information, the purpose of which is to give the court an opportunity to "review the progress of the parties in achieving the case plan goals and determine whether the child continues to be dependent." Ariz. R.P. Juv. Ct. 58(A). The court is also authorized to consider "oral or written reports of the parties," which may implicate credibility assessments, particularly when the participants disagree on what happened or what services were provided. Ariz. R.P. Juv. Ct. 58(E)(1).

¶16        This process demands that parents voice their concerns about services to the juvenile court in a timely manner. It serves no one to wait to bring such concerns to light for the first time on appeal, when months have passed since the severance order was entered. Instead, a parent's failure to assert legitimate complaints in the juvenile court about the adequacy of services needlessly injects uncertainty and potential delay into the proceedings, when important rights and interests are at stake and timeliness is critical. Accordingly, we hold that when the juvenile court record reflects that ADES has been ordered to provide specific services in furtherance of the case plan, and the court finds that ADES has made reasonable efforts to provide such services (including a finding that ADES made a diligent effort to provide appropriate reunification services pursuant to A.R.S. § 8-533(B)(8)), a parent who does not object in the juvenile court is precluded from challenging that finding on appeal. *See State v. Georgeoff*, 163 Ariz. 434, 437, 788 P.2d 1185, 1188 (1990) (explaining that "[e]ven constitutional rights may, of course, be waived"); *In re Eddie O.*, 227 Ariz. 99, 103 n.2, 253 P.3d 296, 300 n.2 (App. 2011) (explaining individuals may forfeit or waive some constitutional rights through their conduct).

¶17        Here, the juvenile court conducted six review hearings over the course of a year (April, June, October, and December 2012; and February and May 2013). Six progress reports submitted by CPS to the juvenile court described the services offered to Mother and her progress with such services. Each of the minute entries from the review hearings

included the court's finding that ADES had made reasonable efforts to provide appropriate reunification services. The minute entries do not reflect any objections by Mother to the CPS progress reports or the court's findings, nor is there any indication in the record that Mother questioned the appropriateness of the services being provided to her in any way. Finally, at the termination hearing, Mother did not argue that ADES failed to make reasonable efforts to provide appropriate reunification services.

¶18 If Mother believed ADES was not making diligent efforts to provide appropriate reunification services at any point, it was incumbent on her to promptly bring those concerns to the attention of the juvenile court, thereby giving that court a reasonable opportunity to address the matter and ensure that ADES was in compliance with its obligation to provide appropriate reunification services as ordered by that court. If Mother had done so, the juvenile court could have addressed Mother's concerns and (1) made additional findings as to why ADES's efforts were sufficient or (2) directed ADES to make appropriate changes to its current offering of services. But in the absence of an objection challenging the type or manner of services, Mother has waived the right to argue for the first time on appeal that ADES failed to offer appropriate reunification services.

## B. Best Interests

¶19 Mother also argues that the juvenile court erred by finding that termination of her parental rights was in the children's best interests. We disagree.

¶20 Termination of the parent-child relationship is in the child's best interest if the child will benefit from the termination or would be harmed if the relationship continued. *Bobby G. v. Ariz. Dep't of Econ. Sec.*, 219 Ariz. 506, 511, ¶ 15, 200 P.3d 1003, 1008 (App. 2008). We review the evidence and draw all reasonable inferences in the light most favorable to upholding the juvenile court's factual findings, *Jesus M.*, 203 Ariz. at 282, ¶ 13, 53 P.3d at 207, and we will affirm unless the court abused its discretion by making clearly erroneous factual findings, *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 2, 982 P.2d 1290, 1291 (App. 1998). Here, the juvenile court found that it would be detrimental to the children to remain with Mother in light of the trauma they had experienced under her care, and that the children would benefit from the permanency and stability that a safe, violence-free home could provide.

¶21	The record supports these findings.  Case manager Thomson opined that termination is in the children's best interests based on Mother's lack of stability and her history of exposing the children to neglect and abuse.  After visits with Mother, the children "regressed" and engaged in self-harm and other aggressive behaviors.  Thomson testified that the three younger children are in adoptive placements that are meeting their physical, social, and emotional needs.  Thomson explained that because the oldest child has unique needs, she is not in an adoptive placement but the present plan is to help her stabilize, which will then permit her to be placed in an adoptive home.  Therefore, the juvenile court did not abuse its discretion in determining that termination of the parent-child relationship is in the children's best interests.

**CONCLUSION**

¶22	We affirm the juvenile court's order terminating Mother's parental rights.



Ruth A. Willingham · Clerk of the Court
F I L E D :  mjt