NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

FAITH P., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, L.E., *Appellees*.

No. 1 CA-JV 19-0164
FILED 2-13-2020

Appeal from the Superior Court in Mohave County
No. B8015JD201604033
The Honorable Rick A. Williams, Judge

**AFFIRMED**

COUNSEL

The Stavris Law Firm, P.L.L.C., Scottsdale
By Alison Stavris
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Cathleen E. Fuller
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

---

Presiding Judge Kenton D. Jones delivered the decision of the Court, in which Judge James B. Morse Jr. and Judge Diane M. Johnsen joined.

---

**J O N E S**, Judge:

**¶1**　　　　Faith P. (Mother) appeals the juvenile court's order terminating her parental rights to L.E. (Child), arguing the Department of Child Safety (DCS) failed to prove a statutory ground for severance by clear and convincing evidence and that termination was in Child's best interests by a preponderance of the evidence.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2**　　　　In April 2016, DCS discovered one-month-old Child, four other children, and five dogs inside an illegally inhabited motor home, surrounded by drugs and drug paraphernalia, exposed electrical wiring, and garbage.[1]  Mother and several other adults were located in a nearby shed with heroin, methamphetamine, marijuana, and various drug paraphernalia.  Mother admitted she was homeless and unemployed and did not regularly take Child's half-brother to school or the doctor.  A hair follicle test returned positive for methamphetamine, and a urine sample obtained a few weeks later tested positive for marijuana.  DCS soon learned that Mother had a history of depression, self-harm, and domestic violence.

**¶3**　　　　DCS alleged Child was dependent as to Mother on the grounds of neglect and substance abuse.[2]  Mother denied the allegations of the petition but stipulated to a dependency.  In May 2016, the juvenile court

---

[1]　　　　"We view the facts and reasonable inferences therefrom in the light most favorable to affirming the juvenile court's order." *Jennifer S. v. DCS*, 240 Ariz. 282, 284, ¶ 1 n.2 (App. 2016) (citing *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010)).

[2]　　　　DCS alleged Child was dependent as to her father on the same grounds.  His parental rights were terminated in May 2019.  He did not challenge the order and is not a party to this appeal.

adjudicated Child dependent and adopted a case plan of family reunification.

¶4	DCS immediately referred Mother for substance abuse testing and treatment, parenting classes, parent aide services, a mental health assessment, individual and domestic violence counseling, a psychiatric evaluation, and supervised visitation. At first, Mother visited with Child but did not actively engage in any other services. She tested positive for methamphetamine in October 2016.

¶5	Shortly thereafter, Mother moved to a sober-living home, engaged in substance abuse treatment, and provided urinalysis samples that were free from all substances. She completed parenting classes, attended visitation consistently, and worked toward improving her bond with Child. She did not engage in individual or domestic violence counseling but acknowledged how her substance abuse and domestic violence had impacted Child and began devising a plan to ensure Child's safety in the future. By February 2017, Mother had secured employment but was then asked to leave the sober-living home for violating its policies. She discontinued counseling and began missing urinalysis tests, purportedly because the services conflicted with her work schedule. Mother submitted to a hair follicle test in May, which was negative for all substances. DCS, encouraged by Mother's insight and progress, began transitioning Child back to Mother's care.

¶6	By July 2017, however, Mother had relapsed on methamphetamine and discontinued all services, visitation, and communication with DCS. Over Mother's objection, the juvenile court changed the case plan to severance and adoption, and DCS moved to terminate Mother's parental rights on the grounds of neglect, substance abuse, and length of time in out-of-home care.

¶7	After using drugs for four months, Mother returned to a sober-living home and re-engaged in substance abuse testing. Although she did not test positive for any substances, Mother missed more than a quarter of the scheduled tests between October 2017 and October 2018. She did not reengage in counseling or substance abuse treatment. She discontinued all visitation with Child between March and June 2018, then attended only half the scheduled visits thereafter, and declined DCS's offer for make-up and extended visits. Mother's seventh visitation referral was closed in September 2018 when she failed to attend a visit for thirty straight days. After each gap in visitation, Child regressed, acting out after each visit and becoming fearful and "clingy" toward her placement.

¶8        In November 2018, DCS recognized Mother's repeated "pattern of success followed by significant relapse and disconnect from the case and [Child]" and renewed its request to terminate Mother's parental rights.  Mother's participation in services again improved, but she did not engage in any behavioral health treatment or domestic violence counseling or complete the recommended psychiatric evaluation.

¶9        In March 2019, the juvenile court suspended visitation between Mother and Child after Child was diagnosed with severe adjustment disorder occasioned by Mother's repeated introduction to and departure from her life.  By the time of the severance trial the following month, Child had been in out-of-home care for three years.

¶10       At trial, the DCS case manager from April 2016 to December 2018 testified that although Mother had completed parenting classes and substance abuse treatment and secured appropriate housing and employment, she had not made the behavioral changes necessary to parent Child.  Specifically, Mother had not proved she could identify the triggers for her substance abuse or maintain sobriety for an extended period; nor had she demonstrated a bond with or committed herself to caring for Child.  Moreover, Mother's dedication to the case plan fluctuated with the immediacy of severance, increasing when termination seemed imminent and tapering off when the exigency was lifted.  According to that case manager, these circumstances suggested that Mother had not actually changed her behavior and was unlikely to do so in the near future.

¶11       The DCS case manager from December 2018 to April 2019 noted that Child had suffered and continued to suffer from the lack of consistency, which was most notable in Child's fearful reaction to Mother's repeated disengagement and reintroduction.  She also testified Child was adoptable and currently in an adoptive placement who was bonded to her and meeting her needs.  Both case managers believed Child would benefit from severance because it would provide her an opportunity to be adopted into a permanent, safe, stable home.

¶12       Mother testified she had been sober since October 2017 and was willing and able to parent Child.  Mother also stated Child was bonded to her and acted out after visits only because she missed Mother.

¶13       After taking the matter under advisement, the juvenile court found DCS proved by clear and convincing evidence that it had made diligent efforts to provide appropriate reunification services, and that termination of Mother's parental rights was warranted because: (1) Mother

had been unable to remedy the circumstances causing Child to be in an out-of-home placement for longer than the statutory period and was unlikely to become an effective parent in the near future, *see* Ariz. Rev. Stat. (A.R.S.) § 8-533(B)(8)(c);[3] and (2) Mother had neglected Child, *see* A.R.S. § 8-533(B)(2). The court also found severance was in Child's best interests and entered an order terminating Mother's parental rights. Mother timely appealed, and we have jurisdiction pursuant to A.R.S. §§ 8-235(A), 12-120.21(A)(1), -2101(A)(1), and Arizona Rule of Procedure for the Juvenile Court 103(A).

## DISCUSSION

### I. DCS Proved a Statutory Ground for Severance by Clear and Convincing Evidence.

¶14 Pursuant to A.R.S. § 8-533(B)(8)(c), a parent's rights may be terminated if the juvenile court finds by clear and convincing evidence that:

> The child has been in an out-of-home placement for a cumulative total period of fifteen months or longer . . . the parent has been unable to remedy the circumstances that cause the child to be in an out-of-home placement and there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future.

*See also Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 17 (App. 2009). DCS must also prove that it made diligent efforts to provide appropriate reunification services to the parent. A.R.S. § 8-533(B)(8); *Jordan C.*, 223 Ariz. at 93, ¶ 17.

¶15 Mother argues the juvenile court erred in finding DCS made diligent efforts to preserve her relationship with Child. Generally, we defer to the finding of diligence so long as it is supported by substantial evidence. *See Lashonda M. v. Ariz. Dep't of Econ. Sec.*, 210 Ariz. 77, 81-82, ¶ 13 (App. 2005) (citations omitted). Moreover, where "[DCS] has been ordered to provide specific services in furtherance of the case plan, and the court finds that [DCS] has made reasonable efforts to provide such services . . . a parent who does not object in the juvenile court is precluded from challenging that finding on appeal." *Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 179, ¶ 16 (App. 2014) (citing *State v. Georgeoff*, 163 Ariz. 434, 437 (1990), and

---

[3] Absent material changes from the relevant date, we cite the current version of rules and statutes.

*In re Eddie O.*, 227 Ariz. 99, 103, ¶ 14 n.2 (App. 2011)). The rationale for this rule is sound:

> It serves no one to wait to bring such concerns to light for the first time on appeal, when months have passed since the severance order was entered. Instead, a parent's failure to assert legitimate complaints in the juvenile court about the adequacy of services needlessly injects uncertainty and potential delay into the proceedings, when important rights and interests are at stake and timeliness is critical.

*Id.* at 178-79, ¶ 16; *see also Trantor v. Fredrikson*, 179 Ariz. 299, 300 (1994) ("Because a trial court and opposing counsel should be afforded the opportunity to correct any asserted defects before error may be raised on appeal, absent extraordinary circumstances, errors not raised in the trial court cannot be raised on appeal.") (citing *Van Dever v. Sears, Roebuck & Co.*, 129 Ariz. 150, 151-52 (1981), and *United States v. Globe Corp.*, 113 Ariz. 44, 51 (1976)).

**¶16** On appeal, Mother contends she could have benefited from continued substance abuse treatment, mental health services, domestic violence counseling, and a bonding assessment. However, Mother never requested additional services or challenged the adequacy of the services DCS provided. On this record, Mother waived her opportunity to challenge the diligence of DCS's reunification efforts by failing to raise the issue with the juvenile court.

**¶17** Mother also suggests that insufficient evidence supports the juvenile court's finding that she had been unable to remedy the circumstances causing Child to be in out-of-home care. We will affirm "unless we must say as a matter of law that no one could reasonably find the evidence to be clear and convincing." *Denise R. v. Ariz. Dep't of Econ. Sec.*, 221 Ariz. 92, 94, ¶ 7 (App. 2009) (quoting *Murillo v. Hernandez*, 79 Ariz. 1, 9 (1955)).

**¶18** The record here contains sufficient evidence to support the juvenile court's findings that, after more than three years of separation from Child, Mother did not prioritize Child's needs or recognize how her inconsistent behavior has caused Child to suffer. These findings support the court's conclusion that Mother had not remedied the circumstances

necessitating out-of-home care and was unlikely to do so in the near future. Accordingly, we find no abuse of discretion.[4]

## II.   DCS Proved Termination was in Child's Best Interests by a Preponderance of the Evidence.

**¶19**          Mother argues the juvenile court erred in concluding termination of Mother's parental rights was in Child's best interests because Mother testified she loves Child and was able to parent her. We review the best-interests finding for an abuse of discretion and will reverse only if "as a matter of law, no reasonable fact-finder could have found the evidence satisfied the applicable burden of proof." *See Titus S. v. DCS*, 244 Ariz. 365, 369, ¶ 15 (App. 2018) (citing *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004), and *Denise R.*, 221 Ariz. at 94-95, ¶¶ 9-10).

**¶20**          The existence of a bond between the parent and child, "although a factor to consider, is not dispositive in addressing best interests." *Dominique M. v. DCS*, 240 Ariz. 96, 98-99, ¶ 12 (App. 2016) (citing *Bennigno R. v. Ariz. Dep't of Econ. Sec.*, 233 Ariz. 345, 351, ¶ 30 (App. 2013)). Instead, the juvenile court must consider all relevant facts and determine, on a case-by-case basis, whether a preponderance of the evidence supports a finding that the child "would derive an affirmative benefit from termination or incur a detriment by continuing in the relationship." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 6 (App. 2004) (citations omitted); *accord Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4, ¶ 16 (2016). The benefit to the child, particularly where she has been out of the parent's care for a lengthy period, is the opportunity for permanency in lieu of remaining indefinitely in a situation where "[a] parent[] maintain[s] parental rights but refuse[s] to assume parental responsibilities." *Oscar O.*, 209 Ariz. at 337, ¶ 16 (quoting *JS-6520*, 157 Ariz. at 243, and citing *James S. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 351, 356, ¶ 18 (App. 1998)) (emphasis omitted). "At this stage, the child's interest in obtaining a loving, stable home, or at the very least avoiding a potentially harmful relationship with a parent, deserves at least as much weight as that accorded the interest of the unfit parent in

---

[4]          Because we find clear and convincing evidence supports the termination order under A.R.S. § 8-533(B)(8)(c), we need not and do not address the juvenile court's neglect finding. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 3 (App. 2002) (citing *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 251, ¶ 27 (2000), and *Maricopa Cty. Juv. Action No. JS-6520*, 157 Ariz. 238, 242 (App. 1988)).

maintaining parental rights." *Kent K. v. Bobby M.*, 210 Ariz. 279, 287, ¶ 37 (2005).

**¶21**　　　The record reflects Child had been in out-of-home care for more than three years, during which time Mother failed to show she could be an appropriate parent. Meanwhile, the Child was adoptable and in an adoptive placement that was meeting her needs. Moreover, the lack of permanency caused Child noticeable distress. The juvenile court determined Child would benefit from the opportunity to be adopted into a permanent, stable, and safe home, and it was not in Child's best interests to further delay permanency. The finding that severance was in Child's best interests is supported by the record, and we find no abuse of discretion. *See Alma S. v. DCS*, 245 Ariz. 146, 152, ¶ 21 (2018) (affirming the best-interests finding where the record indicated "[the] children were excelling in their out-of-home placements, the foster parents were planning to adopt the children, . . . the children [we]re otherwise adoptable" and "[the parent] was still inclined to endanger the children despite her rehabilitative progress").

**CONCLUSION**

**¶22**　　　The juvenile court's order terminating Mother's parental rights to Child is affirmed.

