NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

CLINT G., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, L.G., F.G., K.G., *Appellees*.

No. 1 CA-JV 20-0140
FILED 8-18-2020

---

Appeal from the Superior Court in Yavapai County
No.  P1300JD201900087
P1300JD202000014
The Honorable Anna C. Young, Judge

**AFFIRMED**

---

COUNSEL

Law Office of Florence M. Bruemmer PC, Anthem
By Florence M. Bruemmer
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Eric Devany
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Presiding Judge Randall M. Howe delivered the decision of the Court, in which Judge Kent E. Cattani and Judge Cynthia J. Bailey joined.

---

**H O W E**, Judge:

¶1          Clint G. ("Father") appeals from the juvenile court's order terminating his parental rights to his children, L.G., F.G. and K.G.[1] For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2          We view the facts in the light most favorable to sustaining the juvenile court's order. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 2 ¶ 2 (2016). Clint G. and Kyra C. ("Mother") are the biological parents of L.G., F.G., and K.G. In 2017, the children were sent to Texas to live with Lori C. ("Grandmother") after she was awarded guardianship through a Texas court. According to an Arizona Department of Child Safety report, the children's parents had been abusing substances and were not successful at completing reunification services in Texas. The parents then moved to Arizona.

¶3          In October 2019, Father was convicted of second-degree burglary, trafficking in stolen property, theft, and forgery and was sentenced to five years in prison. Two months later, the Department received a report that Mother was being investigated for trafficking stolen goods. As part of the investigation, police officers searched Mother's home and found methamphetamine, weapons, and ammunition in plain view and within access of the children. While the officers were in the home, L.G. pulled from the couch a "rolled 1 dollar bill" and a "plastic bindle baggy containing .3 grams of meth."

¶4          The officers arrested Mother and the Department took the children into custody because they could not locate Grandmother. The children were each given a hair follicle drug test and each child tested positive for methamphetamine. As part of the Department's investigation,

---

[1]     The juvenile court also terminated the parental rights of the children's mother, but she is not a party to this appeal.

Grandmother also submitted to drug testing and tested positive for methamphetamine and THC.

**¶5** The Department found the children dependent as to Father in March 2020. The Department subsequently moved to terminate his parental rights alleging neglect and length of incarceration due to a felony conviction under A.R.S. § 8–533(B)(2) and (4).

**¶6** In March 2020, the court held a combined dependency, revocation of guardianship, and termination hearing. At the hearing, a Department case manager testified that although the children were not in an adoptive placement, they were adoptable, and their current placement was meeting their needs. The case manager further opined that termination was in the children's best interests because it would free them for adoption to a safe and appropriate home. She also testified that failing to terminate Father's parental rights would be detrimental because the children would be at risk of continued neglect or exposure to substances.

**¶7** The juvenile court terminated Father's rights to the children, finding that termination was warranted on both grounds alleged and that termination would be in the children's best interests. The court found that terminating Father's parental rights would benefit the children because it would further the plan of adoption and protect them from further neglect and substance abuse. It also found that the children were adoptable and noted that the children's placement was meeting all their needs and was the least restrictive placement available. Father timely appealed.

## DISCUSSION

**¶8** Father challenges only the juvenile court's best-interests finding, arguing that insufficient evidence supports the juvenile court's ruling that terminating his parental rights was in the children's best interests. A juvenile court's termination order is reviewed for an abuse of discretion. *E.R. v. Dep't of Child Safety*, 237 Ariz. 56, 58 ¶ 9 (App. 2015). "The juvenile court, as the trier of fact in a termination proceeding, is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280 ¶ 4 (App. 2002). We accept the juvenile court's factual findings unless no reasonable evidence supports them and will affirm a termination order unless the order is clearly erroneous. *Bobby G. v. Ariz. Dep't of Econ. Sec.*, 219 Ariz. 506, 508 ¶ 1 (App. 2008).

**¶9** Terminating parental rights is in the children's best interests if the children will benefit from the termination or will be harmed if the

relationship continues. *Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 179 ¶ 20 (App. 2014). Relevant factors in this determination include whether the current placement is meeting the children's needs, an adoption plan is in place, and the children are adoptable. *Demetrius L.*, 239 Ariz. at 3–4 ¶ 12. Moreover, "[i]n a best interests inquiry . . . we can presume that the interests of the parent and child diverge because the court has already found the existence of one of the statutory grounds for termination by clear and convincing evidence." *Kent K. v. Bobby M.*, 210 Ariz. 279, 286 ¶ 35 (2005).

¶10     Here, the juvenile court found that Father had neglected the children by failing to protect them from Mother's and Grandmother's substance abuse and neglect. It also found that the children's current placement was meeting all their needs and that the Department was making efforts to locate an adoptive placement. Additionally, the case manager testified that the children are adoptable and that the children would benefit from termination because it would further the plan for adoption and provide them with stability and permanency. She also testified that if Father's rights were not terminated, the children would be at risk of continued neglect and exposure to substances. As such, sufficient evidence supports the court's finding that terminating Father's parental rights was in the children's best interests.

¶11     Father also maintains that the case manager's testimony that the children would be adopted by a safe and appropriate home that meets their needs is "purely speculation at best." We decline to consider Father's assertion because we will not substitute our judgment for that of the juvenile court about the credibility and weight of witness testimony. *See Jesus M.*, 203 Ariz. at 282 ¶¶ 4, 12. Moreover, availability of a likely adoptive parent is only one potential benefit relevant to a best-interests assessment, and the record here reflects that additional factors sufficiently support the juvenile court's determination that terminating Father's parental rights would benefit the children.

**CONCLUSION**

¶12     For the foregoing reasons, we affirm.

