NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

HANNAH B., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, M.T., *Appellees*.

No. 1 CA-JV 17-0437
FILED 3-27-2018

Appeal from the Superior Court in Navajo County
No. S0900JD201500034
The Honorable Michala M. Ruechel, Judge

**AFFIRMED**

COUNSEL

Law Office of Elizabeth M. Hale, Lakeside
By Elizabeth M. Hale
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Nicholas Chapman-Hushek
*Counsel for Appellee, Department of Child Safety*

---

**MEMORANDUM DECISION**

---

Presiding Judge Michael J. Brown delivered the decision of the Court, in which Judge Maria Elena Cruz and Judge Patricia A. Orozco[1] joined.

---

**B R O W N**, Judge:

¶1 Hannah B. ("Mother") appeals the superior court's termination of her parental rights to her child, M.T., born in 2013. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 Mother and Lawrence B. ("Father") were in a relationship when the child was born in April 2013. Mother and Father separated in 2014, after which they shared custody of the child, alternating her care every other week.

¶3 In August 2015, the Department of Child Safety ("DCS") received a report that Mother's living situation was unsafe and she had a history of illegal substance abuse. At the time, Mother resided with another man, her abusive boyfriend. During DCS's visit to her home, Mother informed DCS that she possessed a medical marijuana card and smoked marijuana to manage her schizophrenia and bipolar disorder symptoms. DCS found the home minimally adequate and no evidence of illegal drugs. DCS then offered Mother services to help her manage her life and parenting. In late August, however, Mother called DCS and told a caseworker she left her boyfriend and had no way to care for the child.

¶4 In September 2015, DCS removed the child from Father's care because he was arrested while the child was in his care. The child was placed with a relative. The next day, a DCS specialist located Mother at her boyfriend's residence. Upon inquiry, the specialist discovered that a registered sex offender also lived on the property where Mother and her boyfriend resided (a 45-acre parcel in a rural area of Navajo County). DCS

---

[1] The Honorable Patricia A. Orozco, retired Judge of the Arizona Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article VI, Section 3 of the Arizona Constitution.

did not return the child to Mother because of her substance abuse and living situation.

¶5         After DCS filed a petition for dependency, the superior court found the child dependent as to Mother based on substance abuse, mental illness, unstable housing, domestic violence, and unsafe living conditions. The court approved a case plan of family reunification that included the following:  Mother was expected to establish alternative housing that was safe and adequate to care for the child, provide random drug testing, engage in substance abuse counseling, complete a psychological evaluation, participate in domestic violence education and counseling, take parenting education courses, and attend supervised visits with the child.

¶6         Mother participated in four drug tests between September and October 2015, two of which were positive for methamphetamine.  She was offered a substance abuse assessment, but was closed out in November for non-compliance.  DCS referred her to a sober living group but she did not participate.  Mother also frequently cancelled scheduled visits with the child, attending only 6 of 23 scheduled visits between October and December.  During one of the November visits, Mother told a caseworker she broke up with her boyfriend and "he beat the crap out of her and choked her," but she did not call the police.  Mother then moved to her grandmother's house.

¶7         Without informing DCS of her whereabouts, Mother temporarily moved to New Mexico, where she married her current husband, J.L.  Mother then returned to Arizona, visiting the child once in February 2016.

¶8         Shortly thereafter, Mother and J.L. drove to Texas to attend a funeral.  During the trip, they were stopped by a police officer; a search of the vehicle produced over three ounces of marijuana and "a significant amount of drug paraphernalia."  Mother was arrested and remained in jail for 103 days because she was unable to post bail.  Mother stated that while she was incarcerated she had phone calls with the child twice a week.  When released on a personal recognizance bond, Mother stayed in Dallas.  One condition of her release was that she not use any drugs.  According to Mother, she participated in six drug tests, each of which were negative, but she only provided two of the results to DCS.

¶9         DCS referred Mother to service providers near her home in Dallas.  After two months, Mother and J.L. moved to Douglass, Texas, where they live together and have jobs.  DCS again referred Mother to

service providers in her new area. Mother attempted to participate in drug testing by calling in to see if she should be tested that day, but the clinic told her it did not have the necessary paperwork. Upon notice from Mother, DCS promptly fixed the situation. On a separate occasion, Mother went to DCS's recommended behavioral health service center for a "mental check" but was turned away because she did not have insurance and could not afford the treatment. DCS, upon notification of the issue, recommended Mother obtain insurance through the state of Texas because DCS was unable to provide funding for the required treatment. To DCS's knowledge, Mother did not follow-up about the potential insurance.

¶10       After Mother's release from jail, she maintained communication with the child through video calls. Mother had one in-person visit with the child in November 2016, her first visit since February 2016. Mother also completed a four-hour parenting course in January 2017, although it did not meet DCS's requirements.

¶11       In March 2017, Mother pled guilty in Texas to possession of a controlled substance, a third-degree felony, and was given a deferred adjudication of guilt, provided she complies with the community supervision conditions imposed. Under those conditions, Mother was required to remain within Garza County, Texas, unless permitted to leave by the court and/or her community supervision officer. Mother was also to remain sober and participate in drug testing upon request of the community supervision officer or a law enforcement officer. At the time of trial, Mother had completed six drug tests pursuant to her community supervision.

¶12       DCS filed a motion for termination of Mother's and Father's parental rights pursuant to Arizona Revised Statutes ("A.R.S.") sections 8-531(1) and 8-533(B)(1) (abandonment), 8-533(B)(3) (drug use), 8-533(B)(8)(a) (nine months' time-in-care), and 8-533(B)(8)(c) (fifteen months' time-in-care). Following a termination hearing, the superior court granted DCS's motion as to Mother on each ground alleged, except for drug use, and determined that termination was in the child's best interests. Mother's timely appeal followed.

## DISCUSSION

¶13       To terminate parental rights, the superior court must find by clear and convincing evidence the existence of at least one of the statutory grounds for termination enumerated in A.R.S. § 8-533(B), and must also find by a preponderance of the evidence that termination is in the child's

best interests. Ariz. R.P. Juv. Ct. 66(C); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000). "[W]e view the evidence and reasonable inferences . . . in the light most favorable to sustaining the court's decision." *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009). As the trier of fact, the court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004). Accordingly, we will affirm the termination order if it is supported by reasonable evidence. *Jordan C.*, 223 Ariz. at 93, ¶ 18.

**¶14** To terminate Mother's parental rights pursuant to A.R.S. § 8-533(B)(8)(c), DCS was required to prove that the child was in an out-of-home placement for at least fifteen months, Mother was "unable to remedy the circumstances that cause[d] the child to be in an out-of-home placement," and a "substantial likelihood" existed that Mother would "not be capable of exercising proper and effective parental care and control in the near future." DCS was also required to show it "made a diligent effort to provide appropriate reunification services" before termination of parental rights. A.R.S. § 8-533(B)(8).

**¶15** Mother first argues the superior court erred in finding DCS made appropriate reunification services.[2] As an initial matter, as far as the record reveals, Mother waited until the severance hearing to raise any challenge to the adequacy of the services DCS offered throughout the superior court proceedings. Nonetheless, we decline to find waiver on this record but urge parents and their counsel of the need to raise such concerns much earlier in the process. *See Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 179, ¶ 18 (App. 2014) (explaining that if a parent believes reunification services are inadequate, it is incumbent on the parent to "promptly bring those concerns to the attention of the juvenile court, thereby giving that court a reasonable opportunity to address the matter and ensure that [DCS] was in compliance with its obligation to provide appropriate reunification services as ordered by that court").

---

[2] Mother does not challenge the superior court's findings that the child was in care for fifteen months, that she was unable to remedy the circumstances that led to the child's removal, and that termination is in the child's best interests. Additionally, because we find the evidence supports the court's order based on fifteen months' time in care, we need not address the other grounds for termination. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 3 (App. 2002).

¶16 Mother asserts DCS provided her insufficient services after she moved to Texas because DCS did not provide Mother the means to engage in the services. She does not dispute the adequacy of services provided to her in Arizona. As to services in Texas, Mother argues DCS did not (1) give her a referral to take parenting classes, (2) provide paperwork for her to participate in drug testing, or (3) pay for or refer her to a treatment center that would accept her.

¶17 "It is well established that [DCS], before acting to terminate parental rights, has an affirmative duty to make all reasonable efforts to preserve the family relationship." *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 186, ¶ 1 (App. 1999). DCS must therefore provide services to the parent "with the time and opportunity to participate in programs designed to help her to become an effective parent." *Maricopa Cty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994). "The juvenile court is to consider the availability of reunification services to the parent and his or her participation in those services, and must find that [DCS] made a diligent effort to provide such services." *Christina G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 231, 235, ¶ 14 (App. 2011). "DCS is not required," however, "to provide every conceivable service or to ensure that a parent participates in each service it offers." *JS-501904*, 180 Ariz. at 353.

¶18 After DCS was able to find out where Mother was living in Texas, DCS mailed her twice a month indicating where to participate in services. When informed there was a potential issue with Mother's drug testing paperwork, DCS called the drug testing agency and made proper arrangements but she still did not engage in the service. DCS also referred her to a location to engage in mental health services and classes. When Mother informed DCS she could not participate because she did not have insurance, DCS suggested that Mother obtain insurance through the State of Texas. Although Mother testified she could not obtain insurance through the State of Texas, DCS presented evidence that Mother never followed up on the insurance matter. Moreover, as DCS pointed out to the superior court, Mother did not become a felon until less than two months before the termination hearing. Thus, reasonable evidence supports the superior court's finding that DCS made diligent efforts to provide appropriate reunification services to Mother.

¶19 The record also supports the superior court's findings that there was a substantial likelihood that Mother would not be able to parent in the near future because "Mother is unable to leave Texas due to probation," "has not demonstrated she is capable of caring for a [young] child or is refraining from drug use at this time[,] did not meaningfully

engage in DCS services prior to leaving Arizona[,] and has not significantly complied with the case plan since leaving the state."

¶20　　　　As the DCS specialist testified, Mother has been unable to achieve her behavioral change goals.  Mother's video chats with her young child have not permitted her to maintain a normal parent-child relationship; video communication does not permit her to provide the child with physical consolation or redirect the child, except verbally, when she acts out.  The supervisor testified that Mother's parenting ability has weakened because she has not visited the child.

¶21　　　　The record contains no indication of when Mother will be able to parent.  Nor does the record suggest she has made efforts to seek approval to leave Texas to facilitate more frequent contact with the child.  Given Mother's lack of participation in services, DCS did not believe pursuing an Interstate Compact on the Placement of Children ("ICPC") was appropriate.  Even if DCS started the ICPC process, the paperwork and vetting would take six to eight months.

¶22　　　　Mother contends she has demonstrated her ability to raise and properly care for a child because she has stable housing, is employed and has inquired into daycare for the child, and is not using drugs, as evidenced by the drug tests she is required to take in Texas.  None of Mother's alleged clean drug tests were admitted into evidence.  Despite the positive behavioral changes Mother has made, reasonable evidence supports the superior court's finding that she would be unable to parent in the near future.

## CONCLUSION

¶23　　　　For the foregoing, we affirm the superior court's order terminating Mother's parental rights to the child.

