NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

JIMMY F., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, J.F., A.F., *Appellees*.

No. 1 CA-JV 19-0317
FILED 2-11-2020

Appeal from the Superior Court in Maricopa County
No. JD 30571
The Honorable Jo Lynn Gentry, Judge

**AFFIRMED**

COUNSEL

John L. Popilek P.C., Scottsdale
By John L. Popilek
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Doriane F. Zwillinger
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Michael J. Brown delivered the decision of the Court, in which Judge Kenton D. Jones and Judge D. Steven Williams joined.

---

**B R O W N**, Judge:

¶1        Jimmy F. ("Father") appeals from the juvenile court's order terminating his parental rights to his children J.F. and A.F., born in 2010 and 2012, respectively ("the children"). For the following reasons, we affirm.

## BACKGROUND

¶2        In June 2015, DCS filed a dependency petition alleging that Father and the children's mother ("Mother") had neglected the children—both of whom have special needs—and exposed them to domestic violence. DCS removed the children, placed them in foster care, and the juvenile court adjudicated them dependent. In November 2016, DCS moved to dismiss the dependency proceeding relating to J.F. and A.F. Before ruling on the motion, the juvenile court directed the Clerk of the Court to initiate a case in family court "for the purpose of entering . . . orders that survive dismissal" of the dependency. After consolidating the two proceedings, the court awarded Mother sole legal decision-making authority over the children. Father was awarded supervised parenting time, and in its minute entry, the court "respectfully request[ed] that no order increasing [F]ather's access to visitation be entered without [F]ather demonstrating consistent sobriety." The court then dismissed the dependency.

¶3        DCS later learned that Mother was using methamphetamine and had engaged in domestic violence with a new partner in the presence of the children. DCS removed the children from Mother's care and filed a second dependency petition in April 2018. The juvenile court adjudicated the children dependent as to both Father and Mother and approved a case plan of family reunification as to Father.

¶4        DCS provided reunification services, but Father's participation in services was inconsistent. DCS referred Father to TASC for urinalysis testing in July 2018. Father missed multiple tests and tested positive for an alcohol derivative and amphetamines in August 2018. Father's referral at TASC was closed out, and DCS referred him to PSI for

2

urinalysis testing. Father missed approximately 30 more tests over the remainder of the dependency. He submitted an oral swab at TERROS in January 2019 and tested positive for amphetamines and opiates on April 11, 2019.[1] Because Father failed to demonstrate 30 days of sobriety during the dependency, DCS did not refer him for a psychological evaluation.

¶5         DCS referred Father to TERROS for substance abuse counseling in August 2018. Father completed an intake and was diagnosed with alcohol use disorder and amphetamine use disorder. He was asked to participate in intensive outpatient therapy for eight hours a week. He did not attend his sessions and was closed out several weeks later. DCS submitted a second TERROS referral for Father in October 2018, but he again failed to attend multiple group sessions and was closed out in December 2018. DCS submitted a third referral to TERROS on January 7, 2019. Father completed an intake in late January 2019 and began attending standard outpatient treatment sessions. Father missed multiple sessions in February and March 2019. By the end of February 2019, TERROS reported that Father "appear[ed] to be minimally engaged in [treatment] services as evidenced by his participation level in group."[2] By the end of May—the first day of the severance trial—Father had not graduated from outpatient treatment.

¶6         In July 2018, DCS provided Father with a case aide to supervise his visitation with the children. Father reportedly was prepared and appropriate during his visits with the children. In September, DCS submitted a referral for a parent aide for Father. The parent aide provided Father with parenting skills sessions in addition to supervised visitation with the children. Although Father acted appropriately during the visits

---

[1]      Father testified that he tested positive for opiates because he had been given morphine when he was in the hospital due to an infection. He also admitted using methamphetamine in early April 2019, but before he was hospitalized. Father testified that his frustration with DCS caused him to use methamphetamine, and he claimed to have been sober after April 11, 2019.

[2]      Father explained that he did not think the group therapy sessions at TERROS were helpful and that he only attended the sessions because it was required by DCS. He maintained that attending the group sessions made him want to do drugs and that he did not need treatment for substance abuse.

supervised by the parent aide, by the end of December 2018, he had only completed one skills session.

**¶7**         In March 2019, DCS filed a motion to terminate Father's parental rights pursuant to A.R.S. § 8-533(B)(8)(a) (nine months in care) and A.R.S. § 8-533(B)(3) (history of chronic substance abuse).  After the trial, the juvenile court terminated Father's parental rights to the children on both grounds.[3]  The court also found that DCS made diligent efforts in providing reunification services and that termination was in the best interests of the children.  Father timely appealed.

## DISCUSSION

**¶8**         Father argues that DCS failed to provide him with appropriate reunification services and did not prove the grounds for termination by clear and convincing evidence.  He does not challenge the juvenile court's determination that severance was in the children's best interests.

**¶9**         The juvenile court may terminate a parent-child relationship if DCS proves by clear and convincing evidence at least one of the statutory grounds set forth in A.R.S. § 8-533(B).  *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000).  "We will not disturb the juvenile court's order severing parental rights unless its factual findings are clearly erroneous, that is, unless there is no reasonable evidence to support them." *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 2 (App. 1998).  We view the evidence in the light most favorable to sustaining the juvenile court's ruling.  *Lashonda M. v. Ariz. Dep't of Econ. Sec.*, 210 Ariz. 77, 82, ¶ 13 (App. 2005).  The juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002).

### A.  Reunification Services

**¶10**         Under A.R.S. § 8-533(B)(8)(a), the juvenile court may only terminate a parent-child relationship if DCS "has made a diligent effort to provide appropriate reunification services."  A parent also has a right to reasonable reunification services when DCS seeks to terminate parental rights pursuant to A.R.S. § 8-533(B)(3).  *Mary Ellen C. v. Ariz. Dep't of Econ.*

---

[3]         The juvenile court also terminated Mother's parental rights; she is not a party in this appeal.

*Sec.*, 193 Ariz. 185, 191, ¶¶ 28–31 (App. 1999). DCS "is not required to provide every conceivable service or to ensure that a parent participates in each service it offers." *Maricopa Cty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994). DCS fulfills its statutory mandate to diligently provide appropriate reunification services when it "provide[s] [a parent] with the time and opportunity to participate in programs designed to help [the parent] become an effective parent." *Id.*

¶11 Father argues that DCS made "no effort" to provide him with appropriate reunification services. Specifically, he contends that DCS did not contact him until months after the children were taken into care and repeatedly refused to communicate or delayed communicating with him over the course of the dependency. He also asserts that he was improperly closed out of TERROS twice and argues that DCS should not have required him to attend group therapy at TERROS because the therapy "exacerbated" his substance abuse issues.

¶12 Citing *Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 178–79, ¶¶ 16, 18 (App. 2014), DCS argues that Father waived any argument about inadequate reunification services because he did not raise his concerns in the juvenile court. However, Father raised concerns about the lack of communication from DCS, his group therapy at TERROS, and the closed TERROS referrals when he testified at trial. Accordingly, we will address the merits of Father's argument that DCS did not make diligent efforts to provide him with appropriate reunification services.

¶13 DCS provided Father with multiple referrals for substance abuse testing services, parent aide and case aide services, and referred him to TERROS for substance abuse treatment multiple times. Although Father claims DCS failed to contact him until July 2018, the record shows that DCS attempted to contact Father by leaving messages at his last known phone number early in the dependency, and additionally attempted to contact him prior to a Team Decision Making meeting in June 2018. Father was not closed out of his first TERROS referral for "improper reasons" as he asserts. Instead, he was closed out because he failed to attend the group therapy sessions he deemed both "meaningless" and detrimental to his recovery. Even though TERROS closed Father out on his second referral when he was in the hospital the week of December 10, 2018, he had already failed to attend nine group therapy sessions in November and early December 2018. And DCS timely submitted a new TERROS referral for Father on January 7, 2019. Reasonable evidence supports the juvenile court's finding that DCS made diligent efforts to provide Father with appropriate reunification services.

### B.  Sufficiency of the Evidence—Time in Care

**¶14**        Under A.R.S. § 8-533(B)(8)(a), the juvenile court may terminate a parent-child relationship if there is sufficient evidence that a child was in an out-of-home placement for nine months or longer and the parent substantially neglected or willfully refused to remedy the circumstances that caused the child to remain out of the home.  "To 'substantially [neglect] or willfully [refuse] to remedy a circumstance,' a parent must be aware that [DCS] alleges that the circumstance exists and is one that, if it continues to exist at severance, may result in the termination of [the parent's] parental rights."  *Marina P. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 326, 332, ¶ 35 (App. 2007) (citation omitted).

**¶15**        Based upon all of the evidence, the juvenile court found that the children had been cared for in an out-of-home placement for more than nine months, and Father substantially neglected or willfully refused to remedy the circumstances causing the children to remain in care. Reasonable evidence supports the court's finding.

**¶16**        By the time of trial, the children had been in out-of-home placements for over a year.  DCS asked Father to demonstrate his sobriety by participating in substance abuse testing and substance abuse group therapy sessions at TERROS.  Father tested positive for substances on multiple occasions and admittedly used methamphetamine as recently as a month before trial.  Nor did Father consistently participate in group therapy at TERROS.  While Father made some efforts to comply with the case plan, those efforts were insufficient to overcome his failure to participate in good faith in substance abuse testing and therapy. *See Maricopa Cty. Juv. Action No. JS-501568*, 177 Ariz. 571, 576–77 (App. 1994) (explaining that "parents who make appreciable, *good faith efforts* to comply with remedial programs outlined by [DCS] will not be found to have substantially neglected to remedy the circumstances that caused out-of-home placement, even if they cannot completely overcome their difficulties") (emphasis added).

**¶17**        Finally, we disagree with Father's assertion that the juvenile court improperly shifted the burden of proof.  He points to the court's finding that "[Father] did not feel he needed the services and therefore . . . only minimally engaged and did not make the behavioral changes that were needed in order to convince the court that he had remedied the circumstances that caused his children to be removed."  That finding, however, is consistent with the statutory requirements—DCS was required to prove that Father "substantially neglected or willfully refused to remedy the circumstances that cause[d] the child[ren] to be in an out-of-home

placement." *See* A.R.S. § 8-533(B)(8)(a). Furthermore, the court explicitly stated that DCS met its burden of proof.

**¶18**        Because we affirm the juvenile court's order upon the basis of nine months in an out-of-home placement, we need not address whether termination was appropriate under A.R.S. § 8-533(B)(3) (history of chronic substance abuse).

## CONCLUSION

**¶19**        We affirm the juvenile court's order terminating Father's parental rights.



AMY M. WOOD • Clerk of the Court
FILED:  AA