NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

### DIVISION ONE

JENNIFER B., JONATHAN B., *Appellants,*

*v.*

DEPARTMENT OF CHILD SAFETY, E.B., A.B., P.B., J.B., L.B., *Appellees.*

No. 1 CA-JV 20-0114

FILED 7-28-2020

Appeal from the Superior Court in Maricopa County
JD11856, JS20051
The Honorable Sara J. Agne, Judge

**AFFIRMED**

COUNSEL

The Stavris Law Firm, PLLC, Scottsdale
By Alison Stavris
*Counsel for Appellant Jennifer B.*

Law Office of Ed Johnson, PLLC, Peoria
By Edward D. Johnson
*Counsel for Appellant Jonathan B.*

Arizona Attorney General's Office, Phoenix
By Sandra L. Nahigian
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge D. Steven Williams delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge David D. Weinzweig joined.

---

**W I L L I A M S**, Judge:

**¶1**        Jennifer B. ("Mother") and Jonathan B. ("Father") each appeal the juvenile court's order terminating their parental rights to their children. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

**¶2**        Mother and Father have five children in common: E.B., A.B., P.B., J.B., and L.B. (collectively the "Children"), all born between 2011 and 2018.

**¶3**        In 2018, police investigated allegations that Mother physically abused the Children. DCS then filed a dependency petition alleging Mother physically abused, and Father failed to protect, the Children. Neither parent contested the dependency, and the juvenile court established a case plan of family reunification concurrent with severance and adoption.

**¶4**        In May 2019, DCS petitioned for termination of the parent-child relationships based upon abuse and failure to protect, which both parents contested. In November and December 2019, the court held a contested severance adjudication. After taking the matter under advisement, in March 2020 the court issued a detailed ruling terminating both parents' rights to the Children.

**¶5**        Both parents timely appealed; we have jurisdiction pursuant to A.R.S. §§ 8-235(A) and 12-120.21(A)(1), and Arizona Rule of Procedure for the Juvenile Court 103(A).

## DISCUSSION

**¶6**        We review a severance ruling for an abuse of discretion, accepting the court's factual findings unless clearly erroneous, *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004), and viewing the evidence in the light most favorable to sustaining the court's ruling, *Manuel*

*M. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 205, 207, ¶ 2 (App. 2008). Because the juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," we will affirm an order terminating parental rights if "reasonable evidence" supports the order. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009) (quoting *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004)).

**¶7**　　　　To justify termination of a parent-child relationship, the juvenile court must find, by clear and convincing evidence, the existence of at least one of eleven statutory grounds set forth in A.R.S. § 8-533. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000). Abuse, including failure to protect, is one of those grounds. A.R.S. § 8-533(B)(2). "[A]buse includes serious physical or emotional injury or situations in which the parent knew or reasonably should have known that a person was abusing or neglecting a child." *Id.* "[I]f a parent neglects or abuses a child, the court may terminate that parent's rights to their other children . . . even if there is no evidence that the other children were harmed." *Sandra R. v. Dep't of Child Safety*, 248 Ariz. 224, 224, ¶ 13 (2020).

## I.　　　Evidence of Mother's Abuse of Children

**¶8**　　　　Mother argues there was insufficient evidence of abuse to support the court's finding that Mother abused, "at the very least," A.B., P.B., and J.B. Mother points to alleged inconsistencies in the Children's statements, and to her testimony that she never hit the Children with any more force than "an open hand to the bottom." In its ruling, the court questioned the credibility of both parents' testimony, and indicated it found the testimony of A.B. and the DCS investigator more credible.

**¶9**　　　　Our review of the record demonstrates that credible evidence of abuse by Mother was presented, including testimony revealing independent accounts of similar abuse, physical examination reports, and testimony from a DCS investigator. Because the juvenile court is in the best position to weigh evidence and judge credibility, *Jordan C.*, 223 Ariz. at 93, ¶ 18, we will not second-guess the court's decision to believe this testimony over that of Mother.

**¶10**　　　　Mother also contends DCS failed to establish, by clear and convincing evidence, a "constitutional nexus" relating to the two remaining Children who were not specifically found to have been abused by Mother. Our supreme court has "disavow[ed] use of the 'constitutional nexus'

phraseology," and clarified that "the due process requirement embodied in the 'constitutional nexus' concept" is this:

> [T]o terminate parental rights to children who exhibit no evidence of neglect or abuse, under § 8-533(B)(2), the juvenile court must find during the parental unfitness inquiry, by clear and convincing evidence, that there is a risk of harm to those children.

*Sandra R.*, 248 Ariz. at 224, ¶17.

**¶11** As noted, *supra* ¶ 8, the juvenile court found "at the very least" three of the five Children had been abused by Mother. The court then addressed the risk of harm for the oldest, E.B., and the youngest, L.B.:

> Here, the Court finds a clear and convincing risk of harm to [E.B.] and [L.B.], based on the abuse of their siblings. These children are similarly young and vulnerable, and only [E.B.] was allowed out of the house into the community for school and friendships. . . . [L.B.] is still too young to be reliably verbal on her own behalf, and Father cannot protect her or any of the Children.

**¶12** The court's conclusion regarding risk of harm is supported by the record. And "reasonable evidence" supports the juvenile court's termination order. Mother, therefore, has not shown the court abused its discretion in terminating Mother's parental rights.

*II.     Father's Failure to Protect the Children*

**¶13** Similar to Mother, Father contends there was no "objective evidence of any abuse," arguing, in part, that evidence of abuse is lacking because the only doctor that testified at the severance hearing was a psychologist that only spoke to Mother and Father, not the Children. However, severance based upon abuse under A.R.S. § 8-533(B)(2) does not require diagnosis by a medical doctor or psychologist. *E.R. v. Dep't of Child Safety*, 237 Ariz. 56, 59, ¶ 15 (App. 2015). Further, as discussed, *supra* ¶¶ 8-9, there is reasonable evidence in the record to support the court's finding of abuse by Mother.

**¶14** Father also argues there was insufficient evidence he knew or should have known about Mother's abuse of the Children. As to Father's knowledge of abuse, the record includes evidence of: his knowledge of Mother's history of abuse through involvement in a prior dependency case;

his testimony that he knew of the Children's injuries; testimony that Father came home during or just after an incident where A.B. was injured and asked what was going on; Dr. Silberman's testimony that Father would "have some idea of what's going on" in the home; the DCS investigator's testimony that "[t]here's no way" Father would not have knowledge of abuse; Father's documented failure to intervene when Mother exhibited "edginess" with the Children during a visit; Father's refusal to take the Children for a medical evaluation after the forensic interviews; Father's inability to answer whether he would believe the Children if they reported abuse to DCS, police, or a doctor; Father's refusal to believe the Children's present allegations; Father's comment to a case aide that Mother sometimes cut E.B.'s nails too short possibly to deliberately hurt her; and Father's failure to acknowledge the problems.

¶15        Although Father testified he worked long hours and he was not told about Mother's abuse, the court weighed the evidence and concluded that Father knew or should have known about the abuse. Father effectively requests that we reweigh the evidence. However, because the juvenile court "is in the best position to weigh the evidence," we decline to do so, and find that reasonable evidence supports the court's findings and termination order. *See Jordan C.*, 223 Ariz. at 93, ¶ 18.[1]

*III.      Best Interests of the Children*

¶16        In addition to proving grounds exist for termination, DCS must prove, by a preponderance of the evidence, that terminating a parent's rights would be in the children's best interests. A.R.S. § 8-533(B); *Kent K. v. Bobby M.*, 210 Ariz. 279, 288, ¶ 41 (2005). We review the best interests finding for an abuse of discretion. *See Titus S. v. Dep't of Child Safety*, 244 Ariz. 365,

---

[1] In Father's opening brief, he raises the argument DCS must prove it provided Father and Mother "the time and opportunity to participate in programs designed to improve the parent's ability to care for the child[ren]," *Jordan C.*, 223 Ariz. at 94, ¶ 20, and that it "made reasonable efforts to preserve the family relationship," *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 191, ¶ 28 (App. 1999). Although it does not appear Father raised this issue with the juvenile court, the court nevertheless found "that [DCS] made diligent efforts to provide appropriate reunification services to Mother and Father throughout the case." Regardless, "in the absence of an objection [in the juvenile court] challenging the type or manner of services, [Father] has waived the right to argue for the first time on appeal that [DCS] failed to offer appropriate reunification services." *Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 179, ¶ 18 (App. 2014).

369, ¶ 15 (App. 2018). The court must find either that the children would benefit from severance or be harmed by continuation of the relationship. *Maricopa Cty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990).

**¶17** Both Mother and Father argue that because they have participated in parent-aide and counseling services, and have done well with their children during visitation, severance is not in the Children's best interests.[2] In making a best interests finding, however, the juvenile court must "evaluate the totality of the circumstances." *Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 99, ¶ 12 (App. 2016).

**¶18** Here, the court expressly indicated it "considered the totality of the circumstances, including Mother's and Father's efforts toward reunification, the parent-child bond, and fitness to parent." The court specifically noted the Children are adoptable and are succeeding in their current placements. *See Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 5 (App. 1998) (indicating two factors the court "may properly consider in favor of severance" are "the immediate availability of an adoptive placement" and "whether an existing placement is meeting the needs of the child"). The court also properly considered potential detriments to the Children if the parent-child relationships with Mother and Father were maintained, including risk of harm. On this record, the court did not abuse its discretion in finding termination was in the Children's best interests.

---

[2] Father points out that his parent-aide closure report was revised, and that "the only logical conclusion" regarding the revision was that someone in DCS altered the report to make Father and Mother look bad. However, the record reveals the revision was made after the DCS case manager expressed concerns about the parent aide's failure to address abuse and failure to protect, and the issue was discussed with the case manager, the parent aide manager, and the parent aide. The revision was disclosed to the juvenile court as part of progress report dated July 25, 2019.

**CONCLUSION**

¶19        For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:      AA