NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

IN RE TERMINATION OF PARENTAL RIGHTS AS TO N.S.

No. 1 CA-JV 22-0282
FILED 5-23-2023

Appeal from the Superior Court in Maricopa County
No.  JD37277
The Honorable Michael J. Herrod, Judge

**AFFIRMED**

COUNSEL

Maricopa County Public Advocate's Office, Mesa
By Suzanne W. Sanchez
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Bailey Leo
*Counsel for Appellee Department of Child Safety*

**MEMORANDUM DECISION**

Presiding Judge Maria Elena Cruz delivered the decision of the Court, in
which Judge James B. Morse Jr. and Judge Daniel J. Kiley joined.

**C R U Z**, Judge:

**¶1**     P.H. ("Mother") appeals the superior court's termination of her parental rights to her child, N.S.[1] For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

**¶2**     N.S. was born in April 2021 and was exposed to methamphetamine in utero. DCS removed him from Mother's care at the time of his birth. Mother disclosed that she started using methamphetamine when she was a teenager and had used the drug two days before N.S.'s birth. The superior court adjudicated N.S. dependent and approved a case plan of family reunification.

**¶3**     DCS offered Mother services, including substance abuse testing, substance abuse treatment, counseling, visitation services, parenting education through the Nurturing Parenting Program ("NPP"), housing resources, and transportation.

**¶4**     Mother's participation in services was inconsistent. She worked with the NPP provider for several months but was closed out for lack of engagement in January 2022. Mother was inconsistent with visitation and was closed out of case aide services in February 2022 due to lack of participation and excessive cancellations. In March 2022, DCS provided Mother with a new case aide. In June and July 2022, Mother's inconsistency led to six cancelled visits with N.S.

**¶5**     From April 2021 until the termination hearing in mid-November 2022, Mother called in to PSI for drug testing only sporadically and submitted to drug testing on just two occasions. In July 2021, Mother tested positive for methamphetamine. On June 14, 2022, she tested positive for alcohol, marijuana, and methamphetamine. Mother missed two required tests later that month and, although required to do so, did not call in to PSI thereafter. At her July 2021 Terros intake appointment, Mother disclosed she used methamphetamine about five days per week. And at the termination adjudication hearing, Mother testified that she had used methamphetamine from June 2022 to mid-October 2022.

**¶6**     DCS referred Mother to Terros for substance abuse treatment and mental health services in July 2021, October 2021, February 2022, and July 2022. Mother did not engage, and those referrals were closed unsuccessfully. DCS again referred Mother to Terros in August 2022.

---

[1]     The superior court also terminated the parental rights of N.S.'s father. He is not a party to this appeal.

Mother completed an intake and began attending intensive outpatient group therapy sessions in October 2022. Mother attended ten out of fourteen sessions but had not completed intensive outpatient therapy at the time of the termination hearing.

¶7        In June 2022, DCS moved to terminate Mother's parental rights to N.S. on grounds of six-, nine-, and fifteen-months' time in care and substance abuse. *See* Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(3), (8). At the time of the termination hearing, Mother was homeless although DCS had referred her for housing assistance. After the contested hearing, the superior court terminated Mother's parental rights on the grounds of Mother's chronic substance abuse and six-, nine- and fifteen-months' time in care. The court found that termination was in N.S.'s best interests, a finding Mother does not contest on appeal. Mother timely appealed, and we have jurisdiction pursuant to A.R.S. §§ 8-235(A), 12-120.21(A)(1), and -2101(A)(1).

## DISCUSSION

¶8        Mother raises one issue on appeal: whether DCS failed to provide her with appropriate reunification services.

¶9        "We will not disturb the juvenile court's order severing parental rights unless its factual findings are clearly erroneous, that is, unless there is no reasonable evidence to support them." *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 2 (App. 1998). We view the evidence in the light most favorable to sustaining the superior court's ruling. *Lashonda M. v. Ariz. Dep't of Econ. Sec.*, 210 Ariz. 77, 82, ¶ 13 (App. 2005). We do not reweigh the evidence, because the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002). The superior court may terminate a parent-child relationship if DCS proves by clear and convincing evidence at least one statutory ground set forth in A.R.S. § 8-533(B). *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000). The court must also find by a preponderance of the evidence that termination is in the child's best interests. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005).

¶10        The superior court may only terminate a parent-child relationship under A.R.S. § 8-533(B)(8) if DCS "has made a diligent effort to provide appropriate reunification services." A parent also has a right to reasonable reunification services when DCS seeks to terminate parental rights pursuant to A.R.S. § 8-533(B)(3). *Mary Ellen C. v. Ariz. Dep't of Econ.*

*Sec.*, 193 Ariz. 185, 191-92, ¶¶ 29-34 (App. 1999); *see also* A.R.S. § 8-846(A) (requiring DCS to make reasonable efforts to provide services to a child who has been removed from home and the child's parent, except in certain circumstances). DCS "is not required to provide every conceivable service or to ensure that a parent participates in each service it offers." *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994). DCS fulfills its statutory mandate to provide appropriate reunification services diligently when it provides a parent "with the time and opportunity to participate in programs designed to help [the parent] become an effective parent." *Id.* DCS's reasonable efforts requirement is consistent with and encompasses the Americans with Disabilities Act's reasonable accommodation requirement. *Jessica P. v. Dep't of Child Safety*, 251 Ariz. 34, 39, ¶ 15 (App. 2021).

¶11        Citing *Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 178-79, ¶¶ 16, 18 (App. 2014), DCS argues Mother waived any inadequate reunification services argument because she did not raise her concerns in the superior court. However, the superior court found that Mother had timely challenged the adequacy of services in the dependency and termination proceedings. Accordingly, we will address the merits of Mother's claim that DCS did not make diligent efforts to provide her with appropriate reunification services.

¶12        Mother argues DCS failed to appropriately accommodate her diagnosed mental illness—schizophrenia. Specifically, she contends DCS should have provided her with a ride service rather than bus passes for her appointments with service providers and failed to help her navigate the housing resource it referred her to, Home Inc.

¶13        Here, DCS provided Mother with multiple referrals for substance abuse testing services, parent aide and case aide services, and referred her to Terros for substance abuse treatment and mental health services numerous times over the course of the dependency. Mother was inconsistent with those services and unable to remain drug-free for the majority of the dependency. In addition, DCS referred Mother to Home Inc. for housing resources and provided her with bus passes to get to her appointments. The record also shows Mother had a ride service through AHCCCS, which she utilized to attend service appointments on multiple occasions. And Mother testified that she and her long-term partner (N.S.'s father) had been approved for "rapid rehousing" through Home Inc. and would be signing the required paperwork the day after the hearing. Mother cites to nothing in the record indicating she needed additional help navigating housing resources. Reasonable evidence supports the superior

court's finding that DCS made diligent efforts to provide Mother with appropriate reunification services.

## CONCLUSION

**¶14** For the foregoing reasons, we affirm the superior court's order terminating Mother's parental rights to N.S.



AMY M. WOOD • Clerk of the Court
FILED: AA