NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

IN RE TERMINATION OF PARENTAL RIGHTS AS TO J.G., E.G., and T.J.

No. 1 CA-JV 23-0115
FILED 06-11-2024

---

Appeal from the Superior Court in Maricopa County
No. JD36135
The Honorable Christopher Whitten, Judge

**VACATED AND REMANDED**

---

COUNSEL

David W. Bell Attorney at Law, Mesa
By David W. Bell
*Counsel for Appellant Father*

Arizona Attorney General's Office, Phoenix
By Casey D. Ball
*Counsel for Appellee DCS*

Steven D. Eckhardt, Esq.
Stephanie Preciado, Esq.
*Counsel for Children*

---

**MEMORANDUM DECISION**

Presiding Judge Anni Hill Foster delivered the decision of the Court, in which Judge Brian Y. Furuya and Vice Chief Judge Randall M. Howe joined.

---

**F O S T E R**, Judge:

¶1         T.G. ("Father") appeals the superior court's ruling terminating his parental rights to J.G., E.G., and T.J. For the following reasons, this Court vacates the ruling as to the second *Michael J.* factor and remands to the superior court for further findings.

## FACTS AND PROCEDURAL HISTORY

¶2         J.G. and E.G. were born in 2012 and 2014, respectively. Father was incarcerated from 2015 until February 2019. When released, Father lived with his cousin for about two months before moving into the home of the children's maternal aunt ("Aunt") where the children resided. In November 2019, Father was arrested for committing a felony and sentenced a few months later to nine-and-a-half years' imprisonment, with an expected release date in May 2029. T.J. was born after Father went back to prison. The children have remained with Aunt during Father's incarceration.

¶3         In January 2022, the children's guardian ad litem petitioned for dependency, which the court granted a month later after Father pled no contest to the allegations. The guardian then moved the following January to terminate Father's parental rights. After a two-day trial, the court terminated Father's rights based on the length of his incarceration.

¶4         Father timely appealed. This Court has jurisdiction under A.R.S. §§ 8-235, 12-120.21(A)(1), and 12-2101(A)(1).

## DISCUSSION

¶5         On appeal, Father claims the court erred in finding that (1) the Department of Child Safety ("DCS") made diligent efforts to support and nurture the parent-child relationship, (2) Father's prison sentence prevents him from nurturing and maintaining a significant parent-child relationship,

and (3) terminating Father's parental rights was in the children's best interests. This Court reviews a termination decision for abuse of discretion and will uphold it unless unsupported by reasonable evidence. *Jessie D. v. Dep't of Child Safety*, 251 Ariz. 574, 579, ¶ 10 (2021).

## I. The Superior Court Did Not Abuse Its Discretion by Finding That DCS Made Diligent Efforts to Support and Nurture the Parent-Child Relationship.

¶6        Incarcerated parents retain "a fundamental liberty interest in the care, custody, and management of their children." *Jessie D.*, 251 Ariz. at 581, ¶ 20 (citing *Troxel v. Granville*, 530 U.S. 57, 65 (2000)). Thus, "DCS must make diligent efforts to preserve the family by providing services" to preserve the parent-child bond. *Id.* at 581–82, ¶ 20.

¶7        Father argues that DCS did not act reasonably or diligently because it did not facilitate video conferences between him and the children until one month before the termination trial. The State contends that Father waived this argument for most of the dependency by not objecting to DCS's reunification efforts throughout the dependency and not requesting visitation until December 2022. This Court agrees with DCS.

¶8        When parents believe the provided services have been inadequate, they must timely object. *Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 178, ¶ 13 (App. 2014). But the record throughout the dependency proceedings demonstrates that Father made no objections to the findings that DCS made reasonable efforts. It was not until December 2022 that Father noted that he desired greater visitation, but even at that time nothing shows that he objected to DCS's efforts. Father's failure to object in a timely manner to these efforts constitutes waiver. *Id.*

¶9        But even if Father had not waived this argument, his position still fails. DCS was not required to provide services for contact that he was already receiving. *See Pima Cnty. Severance Action No. S-2397*, 161 Ariz. 574, 577 (App. 1989) (concluding the department "is clearly not obligated to provide services which are futile" because "no other services could be provided which had not already been offered"). Here, Aunt was providing Father telephonic visits with the children two or three times a week during the dependency proceedings. Given Aunt's facilitation of multiple calls per week, DCS was not required to duplicate that service.

¶10        Father counters that he wanted virtual visits, which, as noted above, he did not request until December 2022. But the record shows DCS made efforts to arrange these, though they were unsuccessful in doing so

until shortly before trial. DCS further recommended Father avail himself of parenting classes while in prison and informed him it could not refer him for these classes directly due to his incarceration. Reasonable evidence supported the superior court's determination, and the court did not abuse its discretion in finding DCS made reasonable and diligent efforts to provide Father with reunification services.

**II.      The Superior Court Did Not Abuse Its Discretion in Its Findings on Most of the *Michael J.* Factors but Erred Regarding Father's Ability to Maintain and Nurture the Relationship with His Children.**

**¶11**       The superior court may terminate a person's parental rights if that parent has been convicted of a felony and the length of the sentence will deprive the child "of a normal home for a period of years." A.R.S. § 8-533(B)(4). A normal home is "a stable long-term family environment outside a foster care placement, where another parent or a permanent guardian resides and parents the child, and where the incarcerated parent affirmatively acts to maintain a relationship with the child that contributes to . . . the child's stable, family environment." *Timothy B. v. Dep't of Child Safety*, 252 Ariz. 470, 477, ¶ 27 (2022). When evaluating whether a parent's sentence will deprive a child of a normal home, the court must consider all relevant factors, including the following:

> (1) The length and strength of any parent-child relationship existing when incarceration begins, (2) the degree to which the parent-child relationship can be continued and nurtured during the incarceration, (3) the age of the child and the relationship between the child's age and the likelihood that incarceration will deprive the child of a normal home, (4) the length of the sentence, (5) the availability of another parent to provide a normal home life, and (6) the effect of the deprivation of a parental presence on the child at issue.

*Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 251–52, ¶ 29 (2000).

### A. The Court Did Not Abuse Its Discretion in Its Findings on Most of the *Michael J.* Factors.

**¶12**       When addressing the first *Michael J.* factor "the court should consider whether the parent cared for the child, both physically and financially, and whether the parent resided with the child or regularly visited the child if they did not live together." *Jessie D.*, 251 Ariz. at 580, ¶ 11.

**¶13** Here, the court found that Father "did not spend a lot of time with the children" while he was free in 2019 because "he worked sixteen to eighteen hours a day, six days a week." Father correctly notes that the number of hours worked by a parent cannot by itself dictate the relationship between parent and child. But the court's consideration that Father had been out of prison for only a small part of the eldest children's lives and had never met the youngest child does lead to questions about the length and strength of the relationship. Because evidence in this record provides a reasonable basis for the court's decision, and this Court does not reweigh evidence, there was no abuse of discretion as to this factor. *See id.* at 582, ¶ 23.

**¶14** Further, the children's ages and the length of Father's sentence support the finding that his incarceration will deprive the children of a normal home life. When Father's current incarceration began, J.G. was seven years old, E.G. was five, and T.J. was not yet born. By the time Father's expected release date arrives, J.G. will be sixteen, E.G. will be fourteen, and T.J. will be nine. Father's present incarceration of nine-and-a-half years will run over half of the children's lives. And once Father is released, reunification may not be immediately possible until he satisfies additional conditions, thus extending the period even longer. *Jeffrey P. v. Dep't of Child Safety*, 239 Ariz. 212, 214, ¶ 10 (App. 2016).

**¶15** Additionally, no other parent or guardian is presently willing and available to provide the children a normal home life. The children's mother ("Mother") has not contacted the children since March 2020. The DCS case manager testified that Mother could not effectively parent because of substance abuse and has shown no improvement during the dependency proceedings. Mother's parental rights were terminated on the grounds of abandonment, prolonged substance abuse, and out of home placement.

**¶16** Courts must also consider whether a permanent guardian is available to provide a normal home life. *Timothy B.*, 252 Ariz. at 477, ¶ 27. Aunt and her husband previously sought guardianship over the children but now wish to proceed only with adoption; DCS no longer views them as potential guardians. Though Father testified that his mother was willing to be the children's permanent guardian, he first shared that information with DCS the week of trial, and his mother did not testify to corroborate that information.

**¶17** The evidence supports the finding that the effect on the children of parental deprivation will be minimal. The children, who have

special needs, have lived with Aunt and her husband for most or all their lives. The children call Aunt "[m]ommy" and her husband "[d]addy," and the eldest two desire to be adopted. Aunt confirmed she will allow continuing contact between the children and Father. Thus, the court did not err in finding that five of the *Michael J.* factors support termination.

### B. The Superior Court Misapplied the Second *Michael J.* Factor.

**¶18** But the court's determination that the second *Michael J.* factor supported termination was in error. The court found that "[i]t would be nearly impossible for Father [] to have a significant relationship with [the children] for such a long time with so little consistent direct contact." The court appeared focused on the lack of "direct contact" Father has had or may have with the children as opposed to any "electronic contact"—phone calls and videoconferences. Direct contact, though, is not the appropriate standard by which to evaluate this factor. Electronic media afford imprisoned parents a viable method to nurture and maintain a parent-child relationship with their children. *See Jessie D.*, 251 Ariz. at 581, ¶ 17 ("[A]n incarcerated parent can maintain a bond with a child . . . through visits, phone calls, letters, pictures, and gifts.").

**¶19** Here, Father had phone calls with the children throughout his incarceration, often multiple times a week. Aunt, who facilitates the phone calls, testified that the children enjoy those telephonic visits, and the DCS case manager observed the first video conference and testified that the children were excited and that the visit was "wholesome" and "really good." This evidence supports Father's strong desire to have a relationship with the children and his desire to nurture and maintain that relationship to the extent possible. Importantly, no evidence was presented to contradict these points. The court's finding on this second factor, predicated exclusively on inability to maintain direct contact, cannot withstand scrutiny because the court's analysis was directed at the wrong standard and no evidence presented supports the court's finding. Indeed, under the court's emphasis on direct contact, the second *Michael J.* factor could never weigh in an incarcerated parent's favor. The juvenile court's finding as to the second *Michael J.* factor is erroneous.

**¶20** Nevertheless, this one factor alone is not dispositive of a termination proceeding. *See Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 450, ¶ 15 (App. 2007) ("[T]here is no threshold level under each individual factor in *Michael J.* that either compels, or forbids, severance."). Rather, courts must make "an individualized, fact-specific inquiry" that

considers "*all* relevant factors." *Id.* But given this requirement for case-by-case determinations, scenarios may arise where a single factor outweighs all opposing factors. Thus, depending on the circumstances, "[a] lack of evidence on one or several of the *Michael J.* factors may or may not require reversal or remand on a severance order." *Id.* But this Court does not reweigh evidence. *See Jessie D.*, 251 Ariz. at 582, ¶ 23. Therefore, the superior court's order is vacated as to its determination that Father's prison term prevents him from maintaining and nurturing a relationship with the children. The case is remanded for the superior court to reevaluate this second *Michael J.* factor under the correct standard and to determine whether this reconsideration changes the balance of all the factors.

**III.     The Superior Court Did Not Abuse Its Discretion by Finding That Terminating Father's Parental Rights Was in the Children's Best Interests.**

**¶21**      After weighing the *Michael J.* factors, a court must also determine that termination is in the child's best interests. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 149, ¶ 8 (2018). To do so, the court must determine that the child would either benefit from the termination or suffer harm if termination is denied. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4, ¶ 16 (2016). The factors to be considered in determining a child's best interests include: "(1) an adoptive placement is immediately available; (2) the existing placement is meeting the needs of the child; and (3) the children are adoptable." *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 379, ¶ 30 (App. 2010) (citations omitted).

**¶22**      Again, although this Court is remanding this case for findings regarding the grounds for termination, this Court discusses the children's best interests in this situation for the superior court's guidance. *See Woodward v. Woodward,* 117 Ariz. 148, 150 (App. 1977). Here, Aunt plans to adopt the children, two of the children have special mental or physical needs that Aunt and her husband can meet, and adoption would provide the children with stability. This Court finds no abuse of discretion in the superior court's determination that termination is in the children's best interests.

## CONCLUSION

¶23 For the reasons above, the termination ruling is vacated, and this case is remanded to the superior court for findings regarding the second *Michael J.* factor and a re-balancing of all the factors considering those additional findings.

